United States Court of Appeals
FOR THE EIGHTH CIRCUIT

_____

No. 97-1287

_____

United States of America,           *
                                     *
        Appellee,                    *
                                     *
    v.                               *
                                     *
Fernando Diaz-Diaz,                  *
                                     *
        Appellant.                   *


_____

No. 97-1491
_____

Appeals from the United States
District Court for the
District of Minnesota.

United States of America,           *
                                     *
        Appellant,                   *
                                     *
    v.                               *
                                     *
Fernando Diaz-Diaz,                  *
                                     *
        Appellee.                    *

_____

Submitted:  October 24, 1997

Filed:  February 2, 1998

_____

Before FAGG, WOLLMAN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Fernando Diaz-Diaz appeals from the judgment of conviction entered by the district court[1] following a jury verdict finding Diaz-Diaz guilty of the offense of unlawful reentry of a deported alien, a violation of 8 U.S.C. § 1326. The United States cross-appeals from the sentence imposed by the district court. We affirm.

**I.**

Fernando Diaz-Diaz is a citizen of the Republic of Mexico who has made repeated efforts to reside in the United States illegally. In 1982, Diaz-Diaz was first discovered in the United States and was ordered to depart voluntarily. On October 22, 1992, Diaz-Diaz was deported to Mexico from El Paso, Texas. In August of 1993, he was again voluntarily returned to Mexico. In October of 1995, he was deported once more, this time from Laredo, Texas.

During his periods of illegal residency in the United States, Diaz-Diaz accumulated a substantial criminal history. In 1978, Diaz-Diaz was convicted of resisting a peace officer in River Forest, Illinois. In 1985, he was convicted of possession of a stolen motor vehicle in Arlington Heights, Illinois, and was subsequently sentenced for violations of his probation in connection with that incident. In 1990, Diaz-Diaz was arrested in Indianapolis, Indiana, and charged with rape, criminal confinement, and battery for an incident in which he dragged a woman into an abandoned house and forced her to have sexual intercourse with him. A plea agreement resulted in his conviction for sexual battery.

_____

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

-2-

By 1992, Diaz-Diaz was residing in Minnesota, where his criminal activities continued. In June of that year, Diaz-Diaz was convicted of theft. In March of 1994, he was convicted of consuming alcohol in a public place. In July of 1995, Diaz-Diaz sold 8.3 grams of marijuana to an undercover police officer. During his arrest, Diaz-Diaz informed police that he had a pound of marijuana at home and assured them that he would be out selling the drug again within a few hours. Eventually, he was convicted of the sale of a controlled substance. Finally, in February of 1996, police were called to a residence in Minneapolis to investigate a murder. Witnesses reported that Diaz-Diaz had stabbed the victim in the abdomen. The police officers found Diaz-Diaz unconscious and slumped in a chair in the basement. One of his hands was stained with blood, and blood was splattered on the chair, walls, and floor. Diaz-Diaz was arrested and charged with second degree murder. The charges were dismissed, however, after prosecutors learned that the witnesses had been deported and could not be located.

Soon after, in July of 1996, Diaz-Diaz was indicted in district court on one count of illegal reentry in violation of 8 U.S.C. § 1326. Specifically, the indictment charged Diaz-Diaz as follows:

### Count I

On or about June 11, 1996, in the State and District of Minnesota, the defendant, Fernando Diaz-Diaz, an alien who had previously been arrested and deported two times from the United States pursuant to law, knowingly and unlawfully entered the United States, having not obtained the consent of the Attorney General of the United States for reapplication, in violation of 8 U.S.C. 1326.

United States v. Fernando Diaz-Diaz, No. 3-96-87, Indictment (D. Minn. filed July 17, 1996).

-3-

Prior to trial, Diaz-Diaz proposed a jury instruction regarding venue that would have informed the jury that the government must prove by a preponderance of the evidence that the offense charged "was begun, continued, or completed" in the district of Minnesota. This instruction was rejected. At the close of the government's case, Diaz-Diaz moved for a judgment of acquittal, contending that the government had not established venue. This motion was denied. After the jury returned a guilty verdict, Diaz-Diaz renewed his motion for a judgment of acquittal and filed, in the alternative, a motion for a new trial, both of which the district court denied.

With a total offense level of 24 and a category III criminal history, Diaz-Diaz faced a range of imprisonment of 63 to 78 months under the applicable sentencing guidelines. For reasons set forth later in this opinion, the district court sentenced Diaz-Diaz to 10 months' imprisonment, 3 years of supervised release, $50 special assessment, and mandatory drug testing as set forth by 18 U.S.C. § 3608.

Although Diaz-Diaz has completed his sentence and has been deported once again, he appeals, challenging the sufficiency of the evidence and contending that the district court erred in rejecting his proposed instruction on the issue of venue.

## II.

Section 1326 of Title 8 makes it a crime for a previously deported alien to reenter the United States without the permission of the Attorney General. See United States v. Gomez, 38 F.3d 1031, 1033 (8th Cir. 1994).[2] "This offense may be

---

[2]Section 1326 of Title 8 provides in relevant part:

**Reentry of deported alien; criminal penalties for reentry of certain deported aliens**

(a) Subject to subsection (b) of this section, any alien who—

committed in three distinct manners: a previously deported alien may violate section 1326 by, without the Attorney General's permission, (1) entering, (2) attempting to enter, or (3) being found in the United States." Id. at 1033-34. Entry and attempted entry generally occur when an illegal alien enters or attempts to enter through a recognized port of entry. See id. In contrast, being found in the United States typically, though not necessarily, involves a surreptitious entry by the alien and is a continuing violation that is not complete until he is discovered by immigration authorities. See id. at 1034-35; United States v. Ortiz-Villegas, 49 F.3d 1435, 1436 (9th Cir. 1995) (surreptitious entry not prerequisite to prosecution for being deported alien found in United States); United States v. Gay, 7 F.3d 200, 202 (11th Cir. 1993) (deported alien could be convicted of being "found in" United States regardless of surreptitious entry).

---

(1) has been arrested and deported, has been excluded and deported, or has departed the United States while an order of exclusion or deportation is outstanding, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

shall be fined under Title 18, or imprisoned not more than 2 years, or both.

Subsection (b) of section 1326 provides for sentence enhancements when an alien reenters illegally following his deportation subsequent to a conviction for the commission of certain criminal offenses.

Diaz-Diaz first challenges the sufficiency of the evidence. Because he was discovered in Minnesota, rather than being apprehended at a recognized port of entry, and because it is not known where or when he reentered the United States, Diaz-Diaz contends that he can only be considered as having been "found in" the United States and that he should have been so charged. Instead, the indictment alleged that Diaz-Diaz "entered" the United States "on or about June 11, 1996, in the State and district of Minnesota." Diaz-Diaz thus argues that the government did not prove the elements of the offense as charged in the indictment, proving only that he was apprehended in Minnesota and not that he entered in Minnesota.

Although we agree with Diaz-Diaz that the record contains no evidence that his reentry into the United States occurred in Minnesota, we are also satisfied that the indictment was sufficient to charge him with the offense of illegal reentry. An indictment is sufficient if it: (1) contains the elements of the charged offense and fairly informs the defendant of the charge against which he must defend; and (2) enables him to plead double jeopardy as a bar to further prosecution. See United States v. Pemberton, 121 F.3d 1157, 1169 (8th Cir. 1997); United States v. Dolan, 120 F.3d 856, 864 (8th Cir. 1997); Fed. R. Crim. P. 7(c)(1). Unless an indictment is so defective that by no reasonable construction can it be said to charge the offense for which the defendant was convicted, it will be upheld. See Pemberton, 121 F.3d at 1169. When the issue is whether an element of an offense has been omitted from an indictment, moreover, our inquiry is whether the omission is one of substance or one of form only. See id.

In Pemberton, we upheld the sufficiency of an indictment that neglected to allege an agency relationship between the defendant and the Leech Lake Band of Chippewa Indians, an element of the offense outlined in the statute under which the defendant was charged.[3] See id. In so doing, we stated that a citation in the indictment to the

_____

[3] 18 U.S.C. § 666 (1988).

applicable statute, while not in itself sufficient to supply an element of a charged offense omitted by the grand jury, see United States v. Camp, 541 F.2d 737, 740 (8th Cir. 1976), when considered in combination with the other allegations in the indictment as a whole, was adequate under the circumstances to have charged the defendant with the offense for which he was convicted.  See Pemberton, 121 F.3d at 1169.  See also United States v. Forbes, 16 F.3d 1294, 1297 (1st Cir. 1994); United States v. Campos-Asencio, 822 F.2d 506, 508 (5th Cir. 1987).

The nature of the difficulty here, as in Pemberton, is "one of form rather than substance."  121 F.3d at 1169.  Although the indictment might well have stated that Diaz-Diaz had been "found in" this country, we believe that as worded the indictment was adequate to have placed Diaz-Diaz on notice of the specific crime with which he had been charged.  First, as in Pemberton, the indictment specifically referenced the appropriate statute, 8 U.S.C. § 1326, which contains the "found in" language that is missing from the charge.  Second, the text of section 1326 was included within the instructions provided to the jury.  Instruction number fourteen, moreover, which identified the essential elements to be proved, instructed the jury to determine not whether Diaz-Diaz illegally "entered in Minnesota" or was "found," but whether he had "reentered the United States."

Similarly, the indictment stated that Diaz-Diaz "knowingly and unlawfully entered the United States."  As the Eleventh Circuit has noted, the fact that an illegal entry is "capable, in and of itself, of constituting a distinct criminal offense, does not preclude it from being the predicate act to the crime of being illegally 'found in' the United States. By definition, one must enter the United States, either legally or illegally, in order to be found therein." United States v. Castrillon-Gonzalez, 77 F.3d 403, 406 (11th Cir. 1996). A reasonable reading of the indictment as a whole, including the statutory reference, should have alerted Diaz-Diaz that he was accused of having unlawfully reentered the United States and of having been found therein.  Cf. Campos-Asencio, 822 F.2d at 508 (indictment charging illegal reentry after deportation

sufficiently alleged element of lack of consent by Attorney General to reenter, where indictment alleged that alien was in United States unlawfully and cited specific statute).

Diaz-Diaz was sufficiently apprised "of the charges he would be required to defend against," allowing him "to effectively prepare for trial." United States v. Klaphake, 64 F.3d 435, 438 (8th Cir. 1995). Thus, the indictment was not "so defective that by no reasonable construction can it be said to [have charged] the offense for which the defendant was convicted." Pemberton, 121 F.3d at 1169; see also United States v. Davis, 103 F.3d 660, 675 (8th Cir. 1996), cert. denied, 117 S. Ct. 2424 (1997) (mere variance between indictment and proof "which occurs when the charging terms are left unaltered but the evidence offered at trial proves facts different from those alleged in the indictment" does not require reversal of conviction unless variance results in actual prejudice).

Because the indictment was minimally adequate to charge Diaz-Diaz with having been found in the United States in violation of the illegal reentry statute, his challenge to the sufficiency of the evidence must fail. In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the guilty verdict, giving the government the benefit of all reasonable inferences from the evidence that support the verdict. See Dolan, 120 F.3d at 868. We will uphold the verdict if there is an interpretation of the evidence that would allow a reasonable jury to conclude guilt beyond a reasonable doubt. See id.

We have held that an alien is "found in" the United States when that alien is "discovered in" the United States by immigration authorities. See Gomez, 38 F.3d at 1036. "Discovery" in this context consists of two elements: (1) the discovery of a previously deported alien's physical presence in the United States; and (2) the ascertainment of the identity and status of the alien. See id.; United States v. Rivera-Ventura, 72 F.3d 277, 282 (2d Cir. 1995). As Diaz-Diaz essentially concedes, the trial record is replete with evidence that he was discovered in Minnesota by immigration

authorities after his arrest in Minneapolis for second degree murder. His presence and identity were clearly established. Moreover, the record demonstrates that Diaz-Diaz was here without the permission of the Attorney General and had been deported on two prior occasions. Because a reasonable jury could have concluded Diaz-Diaz was guilty of illegal reentry beyond a reasonable doubt, his challenge to the sufficiency of the evidence cannot succeed.

**III.**

Diaz-Diaz contends that the government failed to prove venue and that he was prejudiced by the district court's rejection of his proposed jury instruction on venue. The government has the burden of proving correctness of venue by a preponderance of the evidence. See United States v. Chandler, 66 F.3d 1460, 1470 (8th Cir. 1995). Proper venue may be established by either direct or circumstantial evidence. See id.

The district court relied on the general venue statute in Title 8 to rule that venue was proper. Section 1329 of Title 8 prescribes the appropriate venue for section 1326 prosecutions: "Notwithstanding any other law, such prosecutions or suits may be instituted at any place in the United States at which the violation may occur or at which the person charged with a violation under 1325 or 1326 of this title may be apprehended." Id. (emphasis supplied). In dicta, the Supreme Court has characterized section 1329 as authorizing the prosecution of illegal entry cases at the place of apprehension. See United States v. Cores, 356 U.S. 405, 408 n.6 (1958).

In response, Diaz-Diaz contends that the particularity of the indictment, which charged him specifically with "entering" the United States in the district of Minnesota, requires those specifics of venue alleged to be proved. He reminds us of the constitutional requirement that the trial of all crimes "shall be held in the State where

the said Crimes shall have been committed,"[4] and of our holding that an illegal "entry" under section 1326 of Title 8 is committed and "complete when the deported alien enters or attempts to enter through a recognized INS port of entry." Gomez, 38 F.3d at 1034. As Diaz-Diaz's counsel noted at oral argument, it is incongruous to assert that a statute could effectively authorize the prosecution of a completed offense in a district in which no part of that offense occurred, when the Constitution mandates otherwise.

Because we have determined that Diaz-Diaz was sufficiently charged with having been found in the United States in violation of section 1326, however, his challenge on the venue issue is no longer material. "In contrast to entry and attempted entry, a 'found in' violation is a continuing violation that is not complete until the alien is 'discovered' by immigration authorities." Id. at 1034-35. The record establishes that Diaz-Diaz was discovered in Minnesota in 1996. Thus, his prosecution in that district was proper. See, e.g., United States v. Asibor, 109 F.3d 1023, 1037 (5th Cir.), cert. denied, 118 S. Ct. 254 (1997); United States v. Mancebo-Santiago, 886 F. Supp. 372, 374-75 (S.D.N.Y. 1995), aff'd, 112 F.3d 506 (2d Cir. 1996) (table). Moreover, since proof on the venue issue was clear, the district court did not err in refusing Diaz-Diaz's proposed instruction. See United States v. Moeckly, 769 F.2d 453, 461 (8th Cir. 1985).

## IV.

The government cross-appeals from the sentence imposed by the district court. In response, Diaz-Diaz argues that the cross-appeal is moot since he has served his entire sentence and has been deported.

The Supreme Court has stated that an appeal by the government relating to the merits of a deported alien's conviction is justiciable:

---

[4]U.S. CONST. art. III, § 2. See also U.S. CONST. amend. VI.

That respondents have been deported likewise does not remove the controversy involved. Following a reversal of the Court of Appeals, there would be a possibility that respondents could be extradited and imprisoned for their crimes, or if respondents manage to re-enter this country on their own they would be subject to arrest and imprisonment for these convictions.

United States v. Villamonte-Marquez, 462 U.S. 579, 581 n.2 (1983). Taking guidance from the Court's willingness in Villamonte-Marquez "to let speculative contingencies prevent the mootness of a government criminal appeal," the Ninth Circuit has held justiciable an appeal from the sentence of an alien who had completed his sentence and been deported. United States v. Valdez-Gonzalez, 957 F.2d 643, 647 (9th Cir. 1992). In doing so, however, the court specifically reserved the question of mootness regarding the *reversal* of a sentence for an alien who has served his sentence and exited the country:

> We note, however, that in Villamonte, the Court's reversal of the court of appeals simply led to reinstatement of the defendant's conviction and sentence. [citation omitted]. In the present case, however, any decision other than one affirming the lower court would necessitate resentencing, and possibly preparation of a new sentence report. Whether such proceedings should or could be carried on during a defendant's absence is a question not presently before us.

Id. at 647 n.1.

Relying on the Ninth Circuit's opinion, the Sixth Circuit has held that the government's appeal of a downward departure was not rendered moot by the defendant's completion of his sentence and subsequent deportation. See United States v. Barajas-Nunez, 91 F.3d 826, 829 (6th Cir. 1996) (citing Valdez-Gonzalez, 957 F.2d at 646-47) (vacating and remanding for resentencing). The Second Circuit has similarly

held that a defendant's deportation did not moot the government's appeal of a downward departure in sentencing, so long as resentencing occurred within the defendant's remaining period of supervised release. See United States v. Londono, 100 F.3d 236, 241-42 (2d Cir. 1996). We are mindful, as well, that we have previously ordered the detention of an alien defendant beyond the service of his sentence pending appeal of that sentence by the government. See United States v. Maul-Valverde, 10 F.3d 544, 547 n.2 (8th Cir. 1993).

We agree with the Second, Sixth, and Ninth Circuits that Villemonte-Marquez provides support for the proposition that the deportation of a defendant who has completed his sentence does not automatically moot the government's appeal of a downward departure in sentencing. See Londono, 100 F.3d at 241-42; Barajas-Nunez, 91 F.3d at 829; Valdez-Gonzalez, 957 F.2d at 646-47. While we find it unlikely that the government will seek to extradite him, the prospect that Diaz-Diaz might return to this country on his own accord is not only possible, but, given his history, probable.

The sentence imposed upon Diaz-Diaz included three years of supervised release, a term which, notwithstanding his deportation to Mexico, is scheduled to expire in the year 2000. See United States v. Akinyemi, 108 F.3d 777, 779 (7th Cir. 1997) (deportation of defendant does not terminate sentence of supervised release); United States v. Brown, 54 F.3d 234, 237-38 (5th Cir. 1995) (same). In fact, the terms of Diaz-Diaz's release, in addition to prohibiting him from reentering the United States illegally, require him to report to the nearest United States Probation office within 72 hours should he nevertheless elect to return. If Diaz-Diaz does illegally reenter the United States prior to the expiration of his term of supervised release, and if he is apprehended or his presence otherwise comes to the attention of the government, he would be subject to incarceration or some alternative form of governmental supervision pursuant to the conditions of his prior release from custody. See Barajas-Nunez, 91 F.3d at 829. Because we do not believe such a prospect to be so speculative or remote

that it should prohibit the exercise of jurisdiction, we hold that the government's cross-appeal from Diaz-Diaz's sentence is not moot.[5]

## V.

In the routine case, a conviction for illegal reentry carries a maximum penalty of 2 years of incarceration. See 8 U.S.C. § 1326(a). Congress has determined that such a violation warrants a much more severe penalty when committed subsequent to deportation following a criminal conviction. See Maul-Valverde, 10 F.3d at 545; United States v. Amaya-Benitez, 69 F.3d 1243, 1246 (2d Cir. 1995). In such cases involving an aggravated felony, Congress has authorized an enhanced term of imprisonment of up to 20 years. See 8 U.S.C. § 1326(b)(2). The Sentencing Commission has implemented Congress's view of the heightened gravity of an illegal reentry subsequent to a criminal conviction. See Maul-Valverde, 10 F.3d at 545; United States v. Abreu-Cabrera, 64 F.3d 67, 75 (2d Cir. 1995). Section 2L1.2(a) of the U.S. Sentencing Guidelines Manual (U.S.S.G.) (1995) provides for a base offense level of 8 for an alien who unlawfully enters or remains in the United States following his arrest and deportation in violation of 8 U.S.C. § 1326. This base level is subject to

_____

[5]Like the Ninth Circuit, we limit our holding on the question of mootness to the circumstances of this case. See Valdez-Gonzalez, 957 F.2d at 647 n.1. As a result of our conclusion in Part V of this opinion that the district court did not commit an abuse of discretion in granting a downward departure to Diaz-Diaz, his sentence is simply affirmed. Whether an alien defendant who has completed his sentence and has been deported may be resentenced in absentia by the district court, pursuant to a reversal of his sentence on appeal, is a question we need not now address. Similarly, we note that the question whether the government may appeal the sentence of a deported alien after his term of supervised release has expired is an issue not presently before us.

a 16-level enhancement when the deportation of a defendant alien occurred subsequent to his conviction for an aggravated felony.  See U.S.S.G. § 2L1.2(b)(2) (1995).[6]

Diaz-Diaz's 1995 conviction in Hennepin County, Minnesota, for fifth degree sale of a controlled substance meets the definition of an aggravated felony as contemplated in the application notes to section 2L1.2.  Thus, his pre-sentence report appropriately recommended the 16-level enhancement, bringing Diaz-Diaz's total offense level to 24. Using a category III criminal history, the pre-sentence report then calculated a sentencing range of 63 to 78 months, and recommended a prison term of 63 months.

In granting Diaz-Diaz a downward departure, the district court stated:

> First, the defendant argues that the sixteen point increase in his base offense level for a prior "aggravated felony" drastically overstates the seriousness of the conduct underlying his state court conviction for fifth degree sale of a controlled substance (marijuana) -- the felony upon which the increase is based.  See U.S.S.G. § 2L1.2(b)(1).  The file reflects that in 1995 defendant was convicted of selling 8.3 grams of marijuana to an undercover police officer and sentenced to 22 days confinement, or time served, at the Hennepin County Workhouse.  Defendant argues that increasing his total offense level by sixteen points based on this relatively benign conviction would be unduly harsh and inappropriate.  We agree. . . . .
>
> While defendant's state court felony conviction technically falls within the Guideline's definition of an "aggravated felony," his underlying

---

[6]Section 2L1.2 of the Guidelines has been revised by an amendment effective November 1, 1997.  However, both under the version of section 2L1.2 in effect at the time of Diaz-Diaz's sentencing and under the recently revised version, a defendant previously deported subsequent to a conviction for an aggravated felony is subject to a 16-level sentence enhancement.

conviction does not reflect the kind of grave offense that warrants such a heightened sentence. Given the minuscule amount of marijuana involved and the nominal sentence imposed, the Court concludes that a sixteen point increase in defendant's total offense level would be unduly harsh and contrary to the intent of the Sentencing Commission.

Statement of Reasons for Imposing Sentence at 2-3. Disregarding Diaz-Diaz's felony drug trafficking conviction, the district court employed a total offense level of 8 and a category II criminal history. The court then calculated a sentencing range of 4 to 10 months, and sentenced Diaz-Diaz to a 10-month term of imprisonment.

A district court is authorized to depart from the applicable Guidelines range when "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b); see also United States v. Hernandez-Reyes, 114 F.3d 800, 801 (8th Cir. 1997). The Sentencing Commission's policy statement regarding departures approves of their use when factors exist in a particular case "that have not been given adequate consideration by the Commission," or when, "in light of unusual circumstances, the guideline level attached to that factor is inadequate." U.S.S.G. § 5K2.0. "In the absence of a characteristic or circumstance that distinguishes a case as sufficiently atypical to warrant a sentence different from that called for under the guidelines, a sentence outside the guideline range is not authorized." Id. at cmt; see also United States v. Wind, 128 F.3d 1276, 1277 (8th Cir. 1997). In particular, "dissatisfaction with the available sentencing range or a preference for a different sentence than that authorized by the guidelines is not an appropriate basis for a sentence outside the applicable guideline range." U.S.S.G. § 5K2.0 at cmt.

The Sentencing Commission "forbids consideration of a few grounds for departure, discourages or encourages use of some specific grounds, and does not mention others." United States v. Kapitzke, 130 F.3d 820, 822 (8th Cir. 1997) (citing Koon v. United States, 116 S. Ct. 2035, 2044 (1996)). If use of a certain factor is discouraged, or encouraged but already taken into account in the applicable guideline, departure is permissible only if the factor is present to an exceptional degree or distinguishes the case in some other manner from the typical case in which the factor is present. See id. If a factor is unmentioned, departure on that basis is permissible only when the circumstances of the case are atypical in view of the structure and theory of the Guidelines. See id. "The court must bear in mind the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be 'highly infrequent.'" Koon, 116 S. Ct. at 2045 (citing 1995 U.S.S.G. ch. 1, pt. A); see also United States v. Drew, No. 97-2528WM, 1997 WL 781216 at *1 (8th Cir. Dec. 22, 1997).

Sentencing departure decisions are to be reviewed under a "unitary abuse-of-discretion" standard. Koon, 116 S. Ct. at 2048. Under such a standard, questions of law such as "whether a factor is a permissible basis for departure under any circumstances" are reviewed de novo. United States v. Kalb, 105 F.3d 426, 428 (8th Cir. 1997). However, a district court's decision to depart from the Guidelines "will in most cases be due substantial deference." Koon, 116 S. Ct. at 2046-48; see also Kalb, 105 F.3d at 428; Kapitzke, 130 F.3d at 822.

Under the version of section 2L1.2 applicable when Diaz-Diaz was sentenced, the presence of a prior deportation subsequent to an aggravated felony conviction automatically triggered a mandatory 16-level enhancement. See United States v. Polanco, 29 F.3d 35, 38 (2d Cir. 1994). Several circuits, in fact, have explicitly held that a departure from this sentence enhancement based upon a perceived disparity between a 16-level enhancement and the seriousness of the underlying offense is impermissible as a matter of law. See United States v. Rios-Favela, 118 F.3d 653, 658

-16-

(9th Cir. 1997); United States v. Reyna-Espinosa, 117 F.3d 826, 830 (5th Cir. 1997); Amaya-Benetiz, 69 F.3d at 1247-49; Polanco, 29 F.3d at 38; Abreu-Cabrera, 64 F.3d at 74-76.

On November 1, 1997, however, an amended version of section 2L1.2 became effective. See U.S.S.G. Appendix C, amendment 562 at p. 411-13 (November 1, 1997). The amended application notes to section 2L1.2 include the following provision:

> Aggravated felonies that trigger the adjustment from subsection (b)(1)(A) [the amended aggravated felony enhancement] vary widely. If subsection (b)(1)(A) applies, and (A) the defendant has previously been convicted of only one felony offense; (B) such offense was not a crime of violence or firearms offense; and (C) the term of imprisonment imposed for such offense did not exceed one year, a downward departure may be warranted based on the seriousness of the aggravated felony.

U.S.S.G. § 2L1.2 cmt. (n.5) (1997). In the absence of any ex post facto concerns, the Sentencing Guidelines in effect at the time of sentencing will generally control. See United States v. Strange, 102 F.3d 356, 362 (8th Cir. 1996); United States v. Russell, 913 F.2d 1288, 1291 (8th Cir. 1990); 18 U.S.C. § 3553(a)(4) & (b); U.S.S.G. § 1B1.11(a) & (b)(1). "However, if a court applies an earlier edition of the Guidelines Manual, the court shall consider subsequent amendments, to the extent that such amendments are clarifying rather than substantive changes." U.S.S.G. § 1B1.11(b)(2). See also United States v. Downs, 123 F.3d 637, 643 (7th Cir. 1997).

The commentary to Amendment 562 describes the amendment as making "clarifying changes to the commentary." U.S.S.G. Appendix C, amendment 562 at p. 413. Although one might disagree with this assessment,

> our role is not to declare as an original matter whether [an amendment] works a substantive or a clarifying change to the law in this circuit; our role is merely to decide whether the Commission's statement that [the amendment] can be considered for retroactive use is plainly at odds with the Guidelines.

United States v. Douglas, 64 F.3d 450, 452 (8th Cir. 1995) (relying on Stinson v. United States, 508 U.S. 36, 45-46 (1993) (Guidelines amendments to be taken at face value unless plainly erroneous or inconsistent with Guidelines provision they explain or amend)).  See also Braxton v. United States, 500 U.S. 344, 348 (1991) (Congress contemplated unusually limited role for courts in deciding extent of Guidelines amendment retroactivity); Russell, 913 F.2d at 1295 (McMillian, J., concurring in part and dissenting in part) (Commission's statement that amendment to Guidelines was intended to be clarifying should be accorded substantial weight).

Because we cannot say that the Commission's determination that the changes to the commentary implemented by Amendment 562 are merely clarifying is plainly at odds with the Guidelines, we are obliged to apply the amendment retroactively in this case. See Douglas, 64 F.3d at 452-53.  Under the amended version of section 2L1.2, the "seriousness of the aggravated felony" is an encouraged factor upon which a departure may be based.  U.S.S.G. § 2L1.2 cmt. (n.5) (1997).

Although we believe Diaz-Diaz's situation to involve precisely the sort of circumstances that the section 2L1.2(b) felony enhancement provision was intended to address,[7] "we are dealing with a fact-based judgment call that falls within the district court's sentencing discretion, and we are not permitted to substitute our judgment for

---

[7]See, e.g., Maul-Valverde, 10 F.3d at 547 (defendant's pattern of entering the United States illegally, being arrested for non-immigration offenses, returning to Mexico, and then illegally reentering the country demonstrates that his offense is within heartland of cases to which section 2L1.2(b) enhancement was intended to apply).

that of the sentencing court." <u>Kapitzke</u>, 130 F.3d at 824 (citing <u>Koon</u>, 116 S. Ct. at 2046).  Thus, we conclude that the district court did not abuse its discretion in granting a downward departure based upon the now-encouraged factor of the seriousness of Diaz-Diaz's underlying felony conviction.[8]

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[8]The district court additionally stated that it considered the defendant's medical condition as HIV-positive to be an alternative basis for its downward departure. Because we affirm the district court's exercise of discretion in granting a departure based upon the nature of Diaz-Diaz's underlying felony conviction, we need not address this reason for departure.