# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2626

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Valentin Estrada-Quijas, also known | * | |
| as Valentino Q. Estrada, also known | * | |
| as Valentin Estrada, also known as | * | |
| Angel Joel Estrada, also known as | * | |
| Angel Estrade, also known as | * | |
| Valentine Quijas, also known as | * | |
| Ricardo Magen Flores, also known | * | Appeal from the United States |
| as Leonel Coronado, also known as | * | District Court for the |
| Ricardo Flores, also known as Angel | * | District of Nebraska |
| Estrada, also known as Joel Estrada, | * | |
| Also known as Angel Joe Estrada, also | * | |
| known as Valentin Quijas, also known | * | |
| as Flores Ricordo, also known as | * | |
| Leonel Coronado Salazar, also known | * | |
| as Manuel Cantu, also known as | * | |
| Ricardo Rodriguez-Flores, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  February 9, 1999

Filed:  July 2, 1999

_____

_____

Before McMILLIAN, LAY and MURPHY, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Valentin Estrada-Quijas, a Mexican national, appeals from a final judgment entered in the United States District Court[1] for the District of Nebraska, finding him guilty, pursuant to a negotiated plea agreement, of illegal reentry into the United States without the permission of the Attorney General in violation of 8 U.S.C. § 1326. The district court sentenced appellant to 77 months imprisonment and three years supervised release.[2] See United States v. Estrada-Quijas, No. 8: 97CR192-1 (D. Neb. Apr. 27, 1998) (hereinafter "Order"). For reversal, appellant argues that the district court erred in applying the immigration laws and sentencing guidelines requiring a 16-level increase for having a prior conviction for an "aggravated felony" to his offense level because his prior offense was not considered an "aggravated felony" when he physically reentered the United States on February 21, 1991. For the reasons discussed below, we affirm the judgment of the district court.

Jurisdiction in the district court was proper based upon 18 U.S.C. § 3231. Jurisdiction on appeal is proper based upon 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(b).

_____

[1]The Honorable William G. Cambridge, Chief Judge, United States District Court for the District of Nebraska.

[2]The district court ordered that the period of supervised release is subject to appellant being deported, and that supervised release shall not constitute grounds for withholding appellant's deportation.

BACKGROUND

On November 5, 1997, Immigration and Naturalization Service (INS) agents discovered appellant during a raid on a restaurant in Omaha, NE, where appellant was employed. Appellant admitted to the agents that he had entered the United States illegally after having been deported, and the agents took him into custody.

Appellant had previously been deported from the United States in February 1991 after serving a 16-month term of imprisonment for a 1987 California conviction for corporal injury on a spouse. Appellant had originally been sentenced to three years probation for the offense, but in 1990 his probation was revoked and he was sentenced to 16 months imprisonment. Appellant admits that on February 21, 1991, approximately two weeks after being deported, he reentered the United States without the permission of the Attorney General, and the government stipulated that date as the date of reentry. Since his reentry in February 1991, appellant has lived in the United States, spending the three years before his discovery in Omaha, NE. In the three years he lived in Omaha, appellant married, had no problems with the law, and was consistently employed, mostly in the restaurant business.

Appellant pled guilty to illegal reentry in violation of 8 U.S.C. § 1326, pursuant to a negotiated plea agreement in which the government stated it would consider recommending a three-level reduction for acceptance of responsibility. At the change of plea hearing, the district court declined to accept the plea or plea agreement, pending receipt of the pre-sentence investigation report (PSIR). The PSIR recommended a three-point reduction for acceptance of responsibility, but also a 16-level increase because one of appellant's prior offenses--the 1987 California conviction--was an aggravated felony under the 1997 version of 8 U.S.C. § 1101(a)(43). The district court adopted the findings of fact in the PSIR, and overruled appellant's objection to the 16-level increase. See Order at 7. The district court determined that appellant had a total offense level of 21 and a criminal history category of VI, and sentenced him to 77

months imprisonment--at the bottom of the guideline sentencing range of 77 to 96 months.  See id.  This appeal followed.

## DISCUSSION

We review cases involving the legal interpretation of sentencing guidelines de novo.  See United States v. Cazares-Gonzalez, 152 F.3d 889, 890 (8th Cir. 1998)(citing United States v. Eagle, 133 F.3d 608, 611 (8th Cir. 1998)).

Appellant argues that the district court's application of the 16-level increase was an ex post facto violation because his 1987 California conviction was not considered an aggravated felony when he violated § 1326 by illegally reentering the United States without permission on February 21, 1991.  He contends that changes in the law subsequent to his physical reentry make the sentence entered by the district court significantly more severe than the penalty in effect at the time he reentered illegally. For the reasons discussed below, we affirm the judgment of the district court.

The various provisions affecting appellant's sentence have evolved a great deal since 1988 when Congress first established a harsher sentence for illegal reentry subsequent to a conviction for aggravated felony.[3]  See, e.g., United States v. Gomez-Rodriguez, 96 F.3d 1262, 1263 (9th Cir. 1996).  At first, § 1326(b)(2) carried a maximum sentence of 15 years imprisonment, but the definition of "aggravated felony" (contained in 8 U.S.C. § 1101(a)(43)) included only convictions for murder and certain drug and gun offenses entered after the section's enactment.  See Cazares-Gonzalez, 152 F.3d at 890.  In 1989, the Sentencing Commission amended U.S.S.G. § 2L1.2 to

_____

[3]Subsection (b)(2), which provides for the harsher sentence for illegal reentry subsequent to a conviction for aggravated felony, was first enacted as part of the Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, § 7342, 102 Stat. 4181, 4469-70 (1988).

-4-

include a four-level increase for reentry subsequent to any felony conviction other than a felony conviction for violation of immigration laws. See U.S.S.G. Amendment 193 (effective Nov. 1, 1989); see also U.S.S.G. § 2L1.2(b)(1)(A). In 1990, Congress amended §1101(a)(43) to define "aggravated felony" as any crime of violence for which the offender was sentenced to at least five years, but this was only to be applied prospectively. See Cazares-Gonzalez, 152 F.3d at 890. In 1991 the Sentencing Commission amended § 2L1.2 to include a 16-level increase for illegal reentry after conviction for an aggravated felony, and referenced §1101(a)(43) to define "aggravated felony." See U.S.S.G. Amendment 375 (effective Nov. 1, 1991); see also U.S.S.G. § 2L1.2(b)(1)(B). In 1994, Congress again expanded the definition of aggravated felony, redefining it as "a crime of violence . . . for which the term of imprisonment [is] at least one year[.]" 8 U.S.C. § 1101(a)(43)(F), Immigration and Nationality Technical Corrections Act of 1994, Pub. L. No. 103-416, § 1, 108 Stat. 4305 (Oct. 25, 1994). In addition, Congress expanded the maximum sentence for illegal reentry subsequent to conviction for an aggravated felony from 15 to 20 years. See 8 U.S.C. § 1326 (b)(2), Pub. L. No. 103-322, Title XIII, § 130001(b), 108 Stat. 2023 (Sept. 13, 1994). In 1996, Congress once again expanded the definition of aggravated felony by removing the prospective application limitation, thus including any conviction with a term of imprisonment of at least one year, regardless of its age. See Cazares-Gonzalez, 152 F.3d at 890 (citing Omnibus Consolidated Appropriations Act of 1997, Pub. L. No. 104-208, § 321(b), 110 Stat. 3009, 3009-628 (1996)). Finally, in 1997 the Sentencing Commission amended the definition of aggravated felony in § 2L1.2 to conform to § 1101(a)(43). See U.S.S.G. Amendment 562.

When appellant physically reentered the United States on February 21, 1991, his offense was not considered an "aggravated felony" under § 1326, §1101, or U.S.S.G. § 2L1.2. As such, had he been apprehended at that time, he faced a statutory maximum sentence of five years under § 1326(b)(1), because the definition of aggravated felony subject to the harsher §1326(b)(2) did not cover his 1987 conviction, and a possible

Guideline sentence of 30-37 months.[4] In 1997, however, he was subject to the 16-level increase and the 20-year statutory maximum sentence under § 1326(b)(2), and was sentenced to 77 months. This disparity is the basis of appellant's ex post facto argument.

Appellant's argument fails because it assumes that appellant only violated § 1326 when he physically reentered the United States in February 1991. However, we have previously held that the crime of reentry under § 1326 is an on-going offense that continues until an individual is discovered by authorities. See United States v. Diaz-Diaz, 135 F.3d 572, 575 (8th Cir. 1998) (Diaz). An individual can violate § 1326 in three ways: (1) by entering, (2) by attempting to enter, (3) or by being found in the United States without permission from the Attorney General to reenter after previously being deported. See 8 U.S.C. § 1326(a)(2). When an individual is "found in" the United States, the date he or she is found is generally considered to be the date he or she violated § 1326. See Diaz, 135 F.3d at 575. ("being found in the United States typically, though not necessarily, involves a surreptitious entry by the alien and is a continuing violation that is not complete until he is discovered by immigration authorities.")(citing United States v. Gomez, 38 F.3d 1031, 1034-35 (8th Cir. 1994)); accord, e.g., United States v. Whittaker, 999 F.2d 38 (2d Cir. 1993); United States v.

_____

[4]If he were sentenced under 1991 law, appellant would be subject to 8 U.S.C. § 1326(b)(1), which applied to individuals with prior felony convictions that were not "aggravated felonies." In 1994, 8 U.S.C. § 1326(b)(1) was amended to apply to individuals who had "three or more misdemeanors involving drugs, crimes against the person, or both, or a felony (other than an aggravated felony)," and to increase the maximum sentence for such individuals from 5 years to 10 years. See Pub. L. No. 103-322, Title XIII, § 13001(b), 108 Stat. 2023.

In February 1991, U.S.S.G. § 2L2.1 carried a base offense level of 8 and allowed a 4-level increase for individuals convicted of a felony, other than a felony related to immigration, prior to illegal reentry. See U.S.S.G. Amendment 193 (effective Nov. 1, 1989).

Gonzalez, 988 F.2d 16 (5th Cir. 1993). But see, e.g., United States v. Gomez, 38 F.3d 1031, 1037 (8th Cir. 1994) (finding that the government "could have, through the exercise of diligence typical of law enforcement authorities, discovered" the defendant's illegal presence several years before it actually did find defendant and attempted to prosecute him under § 1326).

Because the offense of illegal reentry is an on-going offense that ends only when an offender is discovered, appellant violated § 1326 when he was found in Nebraska in 1997. As such, the district court did not violate the ex post facto clause by applying the Guidelines that were in effect in 1997.

CONCLUSION

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.