# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2570

_____

United States of America,                  *

                            *

           Appellee,           *

                            *   Appeal from the United States

      v.                     *   District Court for the District

                            *   of Minnesota.

David J. Moskal,               *

                            *

           Appellant.        *

_____

Submitted:  March 14, 2000

Filed:  May 1, 2000

_____

Before RICHARD S. ARNOLD and BEAM, Circuit Judges, and CONMY,[1] District
Judge.

_____

BEAM, Circuit Judge.

David J. Moskal entered a plea of guilty to three counts of mail fraud in violation
of 18 U.S.C. § 1341.  The district court[2] sentenced Moskal to sixty months

_____

[1]The Honorable Patrick A. Conmy, United States District Judge for the District
of North Dakota, sitting by designation.

[2]The Honorable John R. Tunheim, United States District Judge for the District
of Minnesota.

imprisonment, departing upward under sections 3A1.1 and 5K2.0 of the United States Sentencing Guidelines. Moskal appeals the upward departure and we affirm.

## I. BACKGROUND

Moskal, an attorney, was a shareholder in the law firm of Schwebel, Goetz, Sieben, and Moskal, a prominent personal injury firm in Minnesota. In July 1998, the Schwebel firm discovered Moskal had been embezzling money. An emergency meeting was held during which the shareholders confronted Moskal with their suspicions. At the meeting Moskal admitted he had stolen $200,000. In light of this admission, the Schwebel firm fired Moskal and notified the Lawyer's Board of Professional Responsibility of his thefts.[3]

Over the next several months, the shareholders and law enforcement authorities discovered the extent of Moskal's fraud. Moskal had embezzled large sums of money from August 1993 to July 1998. During this period, Moskal stole about $2.4 million from clients, referring attorneys, and his own law firm.

Moskal was indicted in October 1998 and entered a plea agreement with the United States Attorney with respect to sentencing that resulted in an expected sentencing range of thirty to thirty-seven months. As part of this understanding, the parties agreed that neither of them would request a departure.

Before the sentencing hearing, the district court notified the parties that it would consider an upward departure based on several factors. Following a sentencing hearing, the district court departed upward two levels under section 3A1.1, the vulnerable victim guideline. It then departed upward three levels under section 5K2.0

---

[3]Moskal has been disbarred.

on the basis of the factors cited in the letter to counsel. Moskal appeals both upward departures.[4] We affirm.

## II.    DISCUSSION

### A.    Vulnerable Victim

Under section 3A1.1 of the Sentencing Guidelines "[i]f the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to criminal conduct" then a two-level sentence enhancement is required. U.S.S.G. § 3A1.1 (1997). The district court's determination that a vulnerable victim enhancement is deserved turns on a factual finding subject to review for clear error. See United States v. Hogan, 121 F.3d 370, 372 (8th Cir. 1997).

The district court found that Moskal had defrauded several vulnerable victims. The court specifically singled out three victims: a mentally retarded adult who had been hit by a car; another car accident victim who had suffered a debilitating stroke; and a third client who was disabled. Additionally, the court found, based on the testimony of an accountant for the Schwebel firm, that Moskal had stolen from at least eight minors, eight deceased persons, twelve people over the age of sixty, two clients who were either HIV-positive or dying of AIDS, and one homeless person. The district court also found Moskal knew or should have known of these vulnerabilities during the course of his representation.

_____

[4]Moskal made a motion to supplement the record. We grant the motion, but note that the supplemental information was not relevant to our decision. The government also made a motion to strike a portion of Moskal's reply brief if we did not grant the motion to supplement the record. Because we granted that motion, we deny the government's motion to strike.

Moskal, however, contends these findings do not warrant an adjustment. He asserts the district court must show a nexus between the vulnerability and the criminal conduct. Moskal's contention may have had some force under the guideline that was in effect prior to 1995, but the guideline application notes no longer require that the defendant target his victim because of the vulnerability. <u>Compare</u> U.S.S.G. § 3A1.1 App. Note 1 (1993); <u>with</u> U.S.S.G. § 3A1.1 App. Note 2 (1997).

Therefore, the two-level enhancement under section 3A1.1 is not clearly erroneous.

## B. Upward Departure

We review a district court's decision to depart from the guidelines for an abuse of discretion. <u>See</u> <u>Koon v. United States</u>, 518 U.S. 81, 98 (1996). The district court departed upward because of: (1) the large number of vulnerable victims; (2) the extraordinary manner he manipulated the victims to gain their trust; (3) the number of methods he used to defraud his victims; (4) the damage to the Schwebel firm's goodwill and standing in the legal community; and (5) the adverse impact on the legal profession and the system of justice.

A district court may depart if there are mitigating or aggravating circumstances not adequately taken into account by the guidelines. <u>See</u> U.S.S.G. § 5K2.0. The district court has special competence in gauging the ordinariness or unusualness of the facts of a particular case and whether the case falls within the heartland of typical cases that the guidelines are meant to govern. <u>See</u> <u>Koon</u>, 518 U.S. 98-99. The district court's discretion, however, is not unlimited. The Sentencing Guidelines forbid the use of certain factors, encourage or discourage the use of some, and do not even address others. <u>See</u> <u>United States v. Diaz-Diaz</u>, 135 F.3d 572, 580 (8th Cir. 1998). A district court may use an encouraged or discouraged factor already taken into account by the guidelines only if that factor is present to an extraordinary degree. <u>See</u> <u>id.</u> "If a factor

is unmentioned, departure on that basis is permissible only when the circumstances of the case are atypical in view of the structure and theory of the Guidelines" and should be "'highly infrequent.'" Id. (quoting Koon, 518 U.S. at 96). In this case, the district court used a mixture of factors, both encouraged and unmentioned, to support the departure.

The first factor is the significant number of vulnerable victims. A defendant can qualify for an enhancement under section 3A1.1 if he has only one vulnerable victim. See U.S.S.G. § 3A1.1(b). In this case, the district court addressed in detail the special vulnerabilities of three of Moskal's victims, and pointed to at least thirty other clients who met the criteria of section 3A1.1. Additionally, these numbers do not include Moskal's other clients who, by the nature of Moskal's personal injury practice, were suffering from physical or mental injuries or grief over loss of a loved one.

The Sentencing Commission recognized that a two-level adjustment might be inadequate if there is a large number of vulnerable victims, and amended the Sentencing Guidelines to allow an additional two-level adjustment if there is a large number of vulnerable victims. See U.S.S.G. § 3A1.1(b)(2) (1998). Although the amendment is not applicable in this case, we find its logic persuasive. We thus find the district court's use of this factor permissible.

The second factor is the extraordinary lengths to which Moskal went to gain the trust of his clients and then to abuse that trust. The unusual means Moskal utilized included mowing his clients's lawns, taking them to movies, and sending flowers and wedding presents. Moskal also used professions of religious faith to impress on his clients that he was a man of great integrity. We agree with the district court that "these acts served to cultivate his clients' trust in him to an extraordinary level beyond that normally present in the attorney-client relationship." Although Moskal received an enhancement for abuse of trust under section 3B1.3 as a part of his plea agreement, we

find the methods he used to garner the trust of his clients exceeded the contemplation of the guidelines and enabled him to more easily conceal his embezzlement.

The third factor is the large number of schemes employed by Moskal. For example in cases with multiple defendants or insurers, Moskal entered into settlements with one defendant and passed that settlement on to the clients, but did not disclose additional settlements made with other defendants. He told clients settlements were for less than their true amounts, or in cases with multiple plaintiffs from the same family, he only turned over the settlement for one family member. Moskal told one client his case had no merit and then settled the case and kept all the money for himself. He also pocketed referral fees from other attorneys entitled to them. Moskal negotiated lower fees for medical services than had been deposited in the firm's trust account on behalf of clients, and kept the excess for himself. Finally, when third parties, like Medicare, had previously paid for medical expenses, Moskal pocketed the settlement money allotted to the medical expenses rather than reimbursing the third party.

Although Moskal received a two-level enhancement for "more than minimal planning" under section 2F1.1(b)(2)(A), these numerous schemes involved considerable planning over five years. Thus, Moskal's level of planning is exceptional when compared to that contemplated by the guidelines.

The fourth factor is the impact of Moskal's actions on the Schwebel firm. The district court found the firm's goodwill with the public and standing in the legal community were irreparably harmed. Additionally, Moskal's actions had financial repercussions on the firm, its shareholders and employees because the firm immediately repaid all of Moskal's clients. Moreover, the law firm faces a class action lawsuit brought by his clients. Although this factor is not mentioned in the guidelines, the losses suffered by the Schwebel firm are certainly attributable to Moskal's conduct and he should have known such losses were a likely consequence of his theft. We find this factor is an acceptable basis for departure in this case.

-6-

The fifth factor cited by the district court is damage to the legal profession and to the public's confidence in the justice system. Application Note 10 of section 2F1.1 states that the loss calculation under the guidelines may not fully capture the seriousness or harmfulness of the conduct. An example of such a situation is when "the offense caused a loss of confidence in an important institution." U.S.S.G. § 2F1.1 App. Note 10(e).

Moskal was one of the most prominent and successful personal injury attorneys in Minnesota.[5] The district court found his conduct was extraordinarily shocking to the public conscience because of his prominence. Additionally, several of Moskal's victims stated that their confidence in the legal system was undermined. Moskal's behavior and its resulting consequences falls within the situation described by Application Note 10. Therefore, this factor is a permissible basis for departure.

We find all five factors cited by the district court for departure are permissible under the guidelines. Thus, we hold that the district court did not abuse its discretion in departing three levels under section 5K2.0 because the facts of this case fall outside the heartland.

## III.  CONCLUSION

Accordingly, the sentence of the district court is affirmed.

---

[5]A popular legal publication in Minnesota published an article on Moskal describing him as the "Tort King."

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.