PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellant,*

v.                                          No. 01-4548

DANIEL ALEJO-ALEJO,
            *Defendant-Appellee.*

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
William L. Osteen, District Judge.
(CR-00-230)

Argued: December 6, 2001

Decided: April 16, 2002

Before WILKINSON, Chief Judge, and MICHAEL and
TRAXLER, Circuit Judges.

Vacated and remanded by published opinion. Chief Judge Wilkinson
wrote the majority opinion, in which Judge Traxler joined. Judge
Michael wrote a dissenting opinion.

## COUNSEL

**ARGUED:** Lawrence Patrick Auld, Assistant United States Attorney,
Greensboro, North Carolina, for Appellant. William Carlton Ingram,
Jr., First Assistant Federal Public Defender, Greensboro, North Caro-
lina, for Appellee. **ON BRIEF:** Benjamin H. White, Jr., United States
Attorney, Arnold L. Husser, Assistant United States Attorney,

Greensboro, North Carolina, for Appellant. Louis C. Allen, III, Federal Public Defender, Greensboro, North Carolina, for Appellee.

---

**OPINION**

WILKINSON, Chief Judge:

Daniel Alejo-Alejo pleaded guilty to one count of being an illegal alien found in the United States after deportation, in violation of 8 U.S.C. § 1326(a) and (b)(2). At the sentencing hearing, the district court departed downward from the applicable Sentencing Guideline range by reducing the offense level that would otherwise have resulted. Because we find that the district court erred in departing downward when the defendant did not meet the Sentencing Commission's enumerated requirements for such a departure, we vacate the sentence in this case and remand for resentencing.

I.

Daniel Alejo-Alejo is a native and citizen of Mexico who entered the United States in 1989 when he was 17 years old. He remained in the United States and resided in the Rockingham, North Carolina area. In 1994, Alejo-Alejo was convicted in North Carolina state court for, *inter alia*, misdemeanor death by motor vehicle, in violation of N.C. Gen. Stat. § 20-141.4(a)(2), and felony failure to stop after an accident and to remain at the scene, in violation of N.C. Gen. Stat. § 20-166(a). The charges arose out of a motor vehicle accident in which Alejo-Alejo attempted to pass the car in front of him at the same time that a third vehicle, which was behind Alejo-Alejo, attempted to pass as well. Alejo-Alejo's vehicle collided with the third vehicle. That vehicle flipped over and the driver of that car, a deputy sheriff, was killed. Alejo-Alejo fled the scene of the accident and was later arrested. Alejo-Alejo received a five year sentence and was released from prison on October 1, 1996.

While incarcerated, Alejo-Alejo married an American citizen. Once he was released from prison, he remained in the United States. He applied for and received a work permit and found employment in

North Carolina. However, a 1997 change in the immigration laws required that any non-citizen who, like Alejo-Alejo, had a previous felony conviction be deported. The law applied retroactively and as a result, Alejo-Alejo was deported in March 2000.

At some point after his deportation, Alejo-Alejo returned to the United States illegally. On June 29, 2000, INS agents arrested Alejo-Alejo. He was charged with violating 8 U.S.C. §§ 1326(a) and (b)(2), which made illegal the re-entry of a deported alien after conviction for an aggravated felony. He pleaded guilty to being an illegal alien found in the United States after deportation. A Presentence Report ("PSR") was then prepared for sentencing.

The PSR classified the misdemeanor death by motor vehicle as a felony because it was punishable by a term of up to two years in prison and thus qualified as a felony for these purposes. *See* 8 U.S.C. § 1101(a)(43) (defining aggravated felony). Because his prior deportation arose from a conviction for an aggravated felony, the PSR recommended that Alejo-Alejo receive an offense level enhancement under U.S. Sentencing Guidelines Manual § 2L1.2(b)(1)(A) (2000). The addition of a 16-level enhancement to the base offense level of 8, U.S. Sentencing Guidelines Manual § 2L1.2(a), partially offset by a 3 level credit for acceptance of responsibility, U.S. Sentencing Guidelines Manual § 3E1.1, resulted in a total offense level of 21. Alejo-Alejo had a Criminal History Category of III. Therefore, according to the Sentencing Guidelines, the range for imprisonment was 46 to 57 months in prison. Alejo-Alejo conceded that the PSR properly calculated his offense level and the district court ratified the parties' agreement on this issue.

Although he conceded that the PSR properly calculated his offense level under § 2L1.2, Alejo-Alejo requested a downward departure based, *inter alia*, on the alleged relative lack of seriousness of the offense that triggered the aggravated felony enhancement. Alejo-Alejo argued that the district court could depart under a "heartland" theory. *See* U.S. Sentencing Guidelines Manual ch. 1, pt. A, introductory cmt. 4(b) & § 5K2.0 (2000). The United States opposed such a departure and argued that Application Note 5, U.S. Sentencing Guidelines Manual § 2L1.2, cmt. n.5 (2000), delineated the only circumstances under which a district court could consider a departure based

on the seriousness of the underlying felony. Application Note 5 allows a downward departure as follows:

> If subsection (b)(1)(A) applies [the 16-level aggravated felony enhancement], and (A) the defendant has previously been convicted of only one felony offense; (B) such offense was not a crime of violence or firearms offense; and (C) the term of imprisonment imposed for such an offense did not exceed one year, a downward departure may be warranted based on the seriousness of the aggravated felony.

U.S. Sentencing Guidelines Manual § 2L1.2, cmt. n.5. The United States contended, and Alejo-Alejo agreed, that he did not satisfy the criteria set forth in Application Note 5 because his sentence for the underlying aggravated felony had exceeded one year. The district court, however, determined that the convictions that triggered the offense level increase under § 2L1.2(b)(1)(A) differed in kind from the offenses the Sentencing Commission intended to subject to the aggravated felony enhancement, notwithstanding the fact that Alejo-Alejo failed to meet the criteria set forth in Application Note 5. The district court then departed downward eight offense levels, shifting the imprisonment range from 46-57 months to 18-24 months, and sentenced Alejo-Alejo to 21 months in prison. The United States appeals and challenges the authority of the district court to depart downward in this case.

## II.

Alejo-Alejo contends that he was due a downward departure because his prior felony conviction was outside the heartland of aggravated felonies. He fails, however, to meet the criteria the Sentencing Commission ("Commission") set forth in Application Note 5 for downward departures based on the seriousness of the aggravated felony. The Commission has specifically set forth the criteria for when a downward departure should be made based on the seriousness of the prior felony conviction and we are not in a position to second guess that decision.

## A.

A sentencing court may depart and "impose a sentence outside the range established by the applicable guidelines, if the court finds 'that

there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into account by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" U.S. Sentencing Guidelines Manual § 5K2.0 (quoting 18 U.S.C. § 3553(b)). With the exception of a few factors that the Guidelines specifically note may not be considered as grounds for departures by the sentencing court, the Guidelines do not limit "'the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case.'" *Koon v. United States*, 518 U.S. 81, 93 (1996) (quoting U.S. Sentencing Guidelines Manual ch. 1, pt. A, introductory cmt. 4(b)). However, because the Guidelines were established, *inter alia*, to create uniformity and regularity in the sentencing of similarly situated defendants, "[b]efore a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline." *Id.* at 98. This is often referred to as the heartland theory for departures. *See* U.S. Sentencing Guidelines Manual ch. 1, pt. A, introductory cmt. 4(b) & § 5K2.0.

A district court may determine that a case does not fall within the Guideline's heartland and exercise its discretion to depart downward only if "the circumstances and consequences of a case are 'atypical' or 'unusual.'" *United States v. Rybicki*, 96 F.3d 754, 757 (4th Cir. 1996) (citing 18 U.S.C. § 3553(b)). A district court must decide what, if any, circumstances or consequences of the offense make the case "atypical" and identify those factors for consideration in sentencing. *Id.* Once the district court has identified factors which could potentially remove a case from the heartland, each factor must be identified "according to the Guidelines' classification as a 'forbidden,' 'encouraged,' 'discouraged,' or 'unmentioned' basis for departure." *Id.* Encouraged factors are normally an appropriate basis for departure, unless the factors have been adequately taken into account by the applicable guideline. *See Koon*, 518 U.S. at 96; *Rybicki*, 96 F.3d at 757-58. Conversely, discouraged factors may only be relied on for a departure "in exceptional cases." *Koon*, 518 U.S. at 95 (quoting U.S. Sentencing Guidelines Manual ch. 5, pt. H, introductory cmt.); *Rybicki*, 96 F.3d at 758. Departures based on unmentioned factors should be "highly infrequent." *Koon*, 518 U.S. at 96 (quoting U.S. Sentencing Guidelines Manual ch. 1, pt. A, cmt. 4(b)); *Rybicki*, 96 F.3d at

758. Finally, forbidden factors may not be considered at all. *Koon*, 518 U.S. at 95-96.

## B.

Alejo-Alejo argues that the facts of his case were atypical and as such were not adequately considered by the Commission. We disagree. "Given the comprehensive sentencing structure embodied in the guidelines, '[o]nly rarely will we conclude that a factor was not adequately taken into consideration by the Commission.'" *United States v. Weinberger*, 91 F.3d 642, 644 (4th Cir. 1996) (quoting *United States v. Jones*, 18 F.3d 1145, 1149 (4th Cir. 1994)). In drafting the enhancement provision at issue in this case, the Commission explicitly adopted the broad definition of "aggravated felony" contained in 8 U.S.C. § 1101(a)(43). *See* U.S. Sentencing Guidelines Manual § 2L1.2, cmt. n.1. In so doing, the Commission expressly recognized that the crimes "that trigger the adjustment from subsection (b)(1)(A) [the 16-level aggravated felony enhancement] vary widely." U.S. Sentencing Guidelines Manual § 2L1.2, cmt. n.5. While appellant argues that the aggravated felony of which he was convicted, death by motor vehicle, did not involve any criminal intent and for that reason is distinguishable from the other aggravated felonies, the Commission adopted a broad definition of aggravated felony that included this offense. The Commission then dealt directly with potential problems that could result from such a broad definition. It established three criteria that must be met before a district court may consider a downward departure based on the seriousness of the underlying felony. Appellant did not meet those criteria, and to excuse that failure now would simply be to substitute our judgment for that of the Commission.

When the district court opted to depart based on a general heartland principle, U.S. Sentencing Guidelines Manual § 5K2.0, it did not address the Commission's directives in the commentary to § 2L1.2. The Commission, by establishing three criteria that must be met before a downward departure may be considered based on the seriousness of the underlying felony, defined the heartland of cases included in § 2L1.2 to be all those not covered by the criteria in Application Note 5. To allow courts to redefine the heartland of cases and then depart when they believe the sentence is outside this heartland ignores

the goals of regularity and uniformity in sentencing that the Guidelines were designed to promote.

This approach to the Sentencing Guidelines generally, and to § 2L1.2 specifically, has already been adopted by four other circuits.[1] *See United States v. Palomino-Rivera*, 258 F.3d 656, 659-60 (7th Cir. 2001); *United States v. Marquez-Gallegos*, 217 F.3d 1267, 1270-71 (10th Cir), *cert. denied*, 531 U.S. 905 (2000); *United States v. Yanez-Huerta*, 207 F.3d 746, 750 n.3 (5th Cir.), *cert. denied*, 531 U.S. 981 (2000); *United States v. Tappin*, 205 F.3d 536, 539-42 (2d Cir.), *cert. denied*, 531 U.S. 910 (2000). As the Tenth Circuit noted in *Marquez-Gallegos*, the Commission had acknowledged the possibility that, because of the large number of qualifying aggravated felonies, the enhancement provision would apply frequently and "may result in a disproportionately harsh sentence." 217 F.3d at 1270. However, the Tenth Circuit also found that the "Commission, in promulgating Application Note 5, implicitly defined the 'heartland' of such cases to be all those not falling within the class delineated therein." *Id.* at 1270-71. Thus, the Tenth Circuit concluded that a district court "lack[s] discretion to depart under § 5K2.0" based on the seriousness of the underlying felony when the defendant fails to satisfy the requirements of Application Note 5. *Id.* at 1271. We agree with this reasoning.

The Second Circuit's reasoning in *Tappin* is similarly sound. *See* 205 F.3d at 539-42. There, the court stated that "[t]o permit a sentencing court in these circumstances to depart downwardly absent satis-

---

[1] We recognize that this decision is also in some tension with the approach in three other circuits. *See United States v. Alfaro-Zayas*, 196 F.3d 1338, 1342 (11th Cir. 1999); *United States v. Sanchez-Rodriguez*, 161 F.3d 556, 562-63 & n.12 (9th Cir. 1998) (en banc); *United States v. Diaz-Diaz*, 135 F.3d 572, 579-82 (8th Cir. 1998). We, however, find these authorities unpersuasive and note that in *Sanchez-Rodriguez* this issue was discussed only briefly in dictum, that *Alfaro-Zayas* relies almost exclusively on the *Sanchez-Rodriguez* decision, and that in *Diaz-Diaz* the court affirmed the district court's "fact-based judgment call," 135 F.3d at 581, to depart downward without considering whether the defendant's apparent failure to satisfy the criteria in Application Note 5 precluded such a departure. *See United States v. Tappin*, 205 F.3d 536, 541 n.7 (2d Cir. 2000).

faction of all three criteria in Application Note 5 would . . . render the Note effectively meaningless." *Id.* at 5421.

Alejo-Alejo contends that we should read Application Note 5 as setting forth criteria that, when met, turn the seriousness of the aggravated felony into an encouraged factor for departure. And when the criteria in Note 5 are not met, a departure based on the seriousness of or lack of intent required for the aggravated felony is simply an unmentioned or even a discouraged factor for departure. In other words, Alejo-Alejo argues that Application Note 5 does not prohibit a downward departure when the criteria are not met, it just does not encourage such a departure. To begin with, urging a downward departure based on a discouraged or unmentioned factor would hardly resolve the matter in Alejo-Alejo's favor. As noted, the Supreme Court has emphasized that discouraged factors may be the basis for departure only "in exceptional cases" and departures based on unmentioned factors will be "highly infrequent," *Koon*, 518 U.S. at 95-96, and it is anything but clear that a lethal automobile crash where someone flees the scene and is then sentenced to five years in prison represents the sort of circumstances that would warrant departing downward on that basis. In all events, like the Second Circuit in *Tappin*, we find nothing in the "sentencing guidelines, policy statements, and official commentary of the Sentencing Commission," 18 U.S.C. § 3553(b), to support appellant's reading of Application Note 5. *See Tappin*, 205 F.3d at 541.

The Commission took into account the varying severities of aggravated felonies when it promulgated Application Note 5 and "defined the heartland of § 2L1.2 by exclusion." *Palomino-Rivera*, 258 F.3d at 659. Because this factor was "adequately taken into account" by the Commission when § 2L1.2 was promulgated, it is not the proper basis for a departure unless the defendant has met the criteria enumerated in Application Note 5. 18 U.S.C. § 3553(b). To find otherwise would reduce the criteria set forth in Application Note 5 to a mere suggestion that sentencing courts may disregard as they see fit.

III.

At heart this case is disarmingly simple. The Sentencing Commission set forth three criteria that must be satisfied before "a downward

departure may be warranted." Alejo-Alejo did not meet those three criteria and thus was not eligible for a downward departure. Because he received such a departure, we must vacate the sentence in his case.[2]

*VACATED AND REMANDED*

MICHAEL, Circuit Judge, dissenting:

I respectfully dissent. The majority's decision to deny Daniel Alejo-Alejo a downward departure diminishes the special power that the Sentencing Guidelines give district courts to determine whether a particular factor takes a case out of the "heartland" of typical cases covered by each guideline. Because Alejo-Alejo's underlying crime of misdemeanor death by vehicle lacks the element of criminal intent found in other aggravated felonies, the district court properly determined that Alejo-Alejo's case is sufficiently atypical to warrant an eight-level downward departure.

## I.

Alejo-Alejo, who is an alien, pled guilty to reentering the United States illegally after he had been deported. *See* 8 U.S.C. § 1326(a). He was deported following a conviction in North Carolina for misdemeanor death by motor vehicle. The guideline covering illegal reentry, § 2L1.2, calls for a sixteen-level enhancement if the defendant was deported after a conviction for an aggravated felony. U.S.S.G. § 2L1.2(b)(1)(A) (2000). Application note 1 of the guideline incorporates the definition of "aggravated felony" appearing at 8 U.S.C. § 1101(a)(43). U.S.S.G. § 2L1.2, cmt. n.1 (2000). Alejo-Alejo's misdemeanor death by vehicle qualifies as an aggravated felony under 8 U.S.C. § 1101(a)(43)(F) because it was a crime of violence that carried a prison term of at least one year. The district court departed

---

[2]The Sentencing Guidelines were amended on November 1, 2001 and the Commission adopted a more graduated sentencing structure in § 2L1.2 and deleted Application Note 5. Both Alejo-Alejo and the government also appear to have made some alternative arguments with respect to the sentencing determination below. The effect, if any, of the alternative arguments and the amended guidelines is something we leave for the district court on remand.

downward from the sixteen-level enhancement on the ground that Alejo-Alejo's predicate offense (the motor vehicle crime) lacked the element of intent, thus placing it outside the heartland of aggravated felonies. The district court found that the Sentencing Commission in promulgating Guidelines § 2L1.2(b)(1)(A) "did not take into consideration those offenses classified as aggravated felonies where there was no criminal intent on the part of the defendant or the offense was committed unintentionally." In concluding that it was free to depart downward, the court emphasized that misdemeanor death by motor vehicle does not require any criminal intent, which distinguishes it from other aggravated felonies.

The majority contends that lack of criminal intent can never be a basis for downward departure under § 2L1.2 because application note 5 provides the exclusive criteria for departing downward based on the seriousness of the underlying felony. Application note 5 reads as follows:

> Aggravated felonies that trigger the adjustment from subsection (b)(1)(A) vary widely. If subsection (b)(1)(A) applies, and (A) the defendant has previously been convicted of only one felony offense; (B) such offense was not a crime of violence or firearms offense; and (C) the term of imprisonment imposed for such offense did not exceed one year, a downward departure may be warranted based on the seriousness of the aggravated felony.

U.S.S.G. § 2L1.2, cmt. n.5 (2000). According to the majority, the Commission "defined the heartland of cases included in § 2L1.2 to be all those not covered by the [three] criteria in Application Note 5." *Ante* at 6. Because Alejo-Alejo cannot meet all of the criteria of application note 5, the majority concludes that his case is within the heartland, making him ineligible for a downward departure. I respectfully suggest, for the following reasons, that the majority is wrong.

A.

The sentencing statute authorizes a district court to depart when it finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing

Commission in formulating the guidelines." 18 U.S.C. § 3553(b). Each guideline "carve[s] out a 'heartland,' a set of typical cases embodying the conduct that [the] guideline describes." U.S.S.G. ch. 1, pt. A, introductory cmt. 4(b) (2000). As the Supreme Court has said, "[b]efore a departure is permitted, certain aspects of a case must be found unusual enough for it to fall outside the heartland of cases in the Guidelines." *Koon v. United States*, 518 U.S. 81, 98 (1996). It is the "atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm," that may be outside the heartland and suitable for a departure. U.S.S.G. ch. 1, pt. A, introductory cmt. 4(b) (2000). The Commission lists several factors that are never a basis for departure. These are: race, sex, national origin, creed, religion, and socioeconomic status (U.S.S.G. § 5H1.10); lack of guidance as a youth (§ 5H1.12); drug or alcohol dependence (§ 5H1.4); economic coercion and duress (§ 5K2.12); and post-sentence rehabilitation (§ 5K2.19). Apart from these relatively few factors, "the Commission does not intend to limit the kinds of factors . . . that could constitute grounds" for taking a case out of the heartland and departing if the case is sufficiently unusual. U.S.S.G. ch. 1, pt. A, introductory cmt. 4(b) (2000).

The majority holds that lack of criminal intent, which is not mentioned in application note 5, can never be a factor that might take a § 2L1.2 case out of the heartland of aggravated felonies and provide a basis for departure under the catchall provision, § 5K2.0. The holding thus has the effect of categorically proscribing lack of criminal intent as a basis for departure. This result contradicts what the Supreme Court and our court have said. It also overlooks the Commission's formal practice of specifically listing any factor that cannot provide grounds for departure. As the Supreme Court put it in *Koon*, the Commission has "determin[ed] that, with few exceptions, departure factors should not be ruled out on a categorical basis." *Koon*, 518 U.S. at 108. We have said the same thing: "Any factor 'not *expressly forbidden*' by the Guidelines 'potentially may serve as a basis for departure.'" *United States v. Debeir*, 186 F.3d 561, 566 (4th Cir. 1999) (quoting *United States v. Brock*, 108 F.3d 31, 35 (4th Cir. 1997)) (emphasis added). When the Guidelines intend to proscribe categorically a factor as a basis for departure, they do so expressly and clearly. *See e.g.*, U.S.S.G. § 5H1.10 (stating that race, sex, national origin, creed, etc. are "factors [that] are not relevant in the

determination of a sentence."). All of this means that "a federal court's examination of whether a factor can ever be an appropriate basis for departure is limited to determining whether the Commission has proscribed, as a categorical matter, consideration of the factor." *Koon*, 518 U.S. at 109.

Application note 5 does not categorically proscribe lack of criminal intent as a factor. The note is not written in absolute terms. It begins by recognizing that "[a]ggravated felonies that trigger the adjustment from subsection (b)(1)(A) vary widely." U.S.S.G. § 2L1.2, cmt. n.5 (2000). It then lists three criteria which, if present, *may* warrant a downward departure "based on the seriousness of the aggravated felony." *Id.* Nowhere does the application note say that these criteria provide the only basis for taking a case out of the heartland and awarding a downward departure when the underlying crime is less serious than the typical one covered by § 2L1.2(b)(1)(A). Because the Commission has not categorically proscribed lack of criminal intent as a factor that can be considered for taking a case outside of § 2L1.2's heartland and departing, the majority is wrong to hold that the district court could not consider that factor.

Furthermore, the majority ignores the theory and structure of the Guidelines when it contends that application note 5 implicitly defines what lies *inside* the heartland of § 2L1.2(b)(1)(A) by listing criteria that might take a case *outside* the heartland. The majority concludes that the heartland of typical cases includes all cases not covered by the three listed criteria and that only those cases satisfying the three criteria are outside the heartland. To reach this conclusion, the majority attributes to the Guidelines a comprehensiveness that they do not claim for themselves. The Guidelines were written with the realization that "[a] sentencing system tailored to fit every conceivable wrinkle of each case would quickly become unworkable." U.S.S.G. ch. 1, pt. A, introductory cmt. 3 (2000). Thus, the Commission never intended that the Guidelines would exhaustively consider every factor that might take a case outside the heartland. The reason is simple: "it is difficult to prescribe a single set of guidelines that encompass the vast range of human conduct potentially relevant to a sentencing decision." U.S.S.G. ch. 1, pt. A, introductory cmt. 4(b) (2000). In other words, factors that might take a case outside the heartland and allow departure "cannot, by their very nature, be comprehensively listed and

analyzed in advance." U.S.S.G. § 5K2.0 (2000). *See also* U.S.S.G. ch. 1, pt. A, introductory cmt. 3 (stating that "the list of possible permutations of factors is virtually endless."). The Sentencing Commission gives district courts discretion to depart under § 5K2.0 precisely because it is impossible for the Guidelines to account for every potential factor in advance. Consequently, the decision about whether a particular factor takes a case outside the heartland and warrants departure "rests with the sentencing court on a case-specific basis." U.S.S.G. § 5K2.0. This decision is due substantial deference for it "embodies the traditional exercise of discretion by a sentencing court." *Koon*, 518 U.S. at 98. The deference principle is basic because "[d]istrict courts have an institutional advantage over appellate courts in making [the] determinations [relevant to departure], especially as they see so many more Guidelines cases than [we] do." *Id.* Indeed, the Supreme Court has warned us that "[t]o ignore the district court's special competence — about the 'ordinariness' or 'unusualness' of a particular case — would risk depriving the Sentencing Commission of an important source of information, namely, the reactions of the trial judge to the fact-specific circumstances of the case." *Id.* at 98 (internal quotations and citations omitted).

The district court found that when the Sentencing Commission formulated Guidelines § 2L1.2(b)(1)(A), the Commission did not consider that the prescribed sixteen-level aggravated felony enhancement might apply to a crime that lacked the intent element. The structure of the guideline supports the district court's finding. When Alejo-Alejo was sentenced, the guideline simply said that if a defendant convicted of illegal reentry "previously was deported after a criminal conviction . . . for an aggravated felony, increase by **16** levels." U.S.S.G. § 2L1.2(b)(1)(A) (2000). The Commission, quite understandably, did not provide a list of aggravated felonies that would trigger the enhancement. Rather, it incorporated the definition of aggravated felony appearing in the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43). The definition of aggravated felony consists of twenty-one paragraphs listing dozens of specific crimes (for example, murder and rape) and general classes of crimes (for example, a crime of violence as defined in 18 U.S.C. § 16 that carries a prison term of at least one year). A crime described in the definition is covered whether it violates federal or state law or the law of a foreign country. 8 U.S.C. § 1101(a)(43). The universe of aggravated felonies

covered by the definition, and hence the guideline, is virtually end-less. It is thus a fair inference that the Commission did not consider — indeed, it could not have considered — all of the factors, such as lack of intent, that might take a case outside the heartland of aggra-vated felonies.

The Commission has acknowledged, in substantially amending Guidelines § 2L1.2, that it had not fully considered the wide varia-tions in the seriousness of crimes swept in by use of the aggravated felony definition. *See* U.S.S.G. app. C., amd. 632 (2001). The Com-mission recognized that the pre-amendment version of § 2L1.2(b)(1)(A) (the version that applies to Alejo-Alejo) "sometimes result[ed] in disproportionate penalties because of the 16-level enhancement provided in the guideline for a prior conviction for an aggravated felony. The disproportionate penalties result[ed] because [of] the breadth of the definition of 'aggravated felony.'" *Id.* The Commission noted that sentencing courts had addressed the inequity built into the guideline "by increased use of departures." *Id.* The new guideline adopts a more graduated approach, so that now only the most serious felonies merit a sixteen-level enhancement, other felo-nies merit twelve or eight additional levels (depending on their sever-ity), and misdemeanors (three are required) involving violence or drug trafficking merit only four. U.S.S.G. § 2L1.2 (2001). The amendments to § 2L1.2 deleted application note 5 entirely. The amendments and the stated reasons for them confirm that the Com-mission had not considered all of the factors that would make an aggravated felony unusual and take it out of the heartland.

The majority claims that allowing a district court to place an aggra-vated felony committed without criminal intent outside the heartland "ignores the goals of regularity and uniformity in sentencing that the Guidelines were designed to promote." *Ante* at 6-7. But the majority pushes uniformity at the expense of an equally important goal of the guidelines: "proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of dif-fering severity." U.S.S.G. ch. 1, pt. A, introductory cmt. 3 (2000). Proportionality is to be achieved in part through § 5K2.0 departures taken in atypical cases that fall outside the heartland. Indeed, without the discretion that § 5K2.0 accords district courts to depart, there would be no way to avoid a certain number of disproportionate sen-

tences that a literal application of the Guidelines to every case would make inevitable — inevitable because, as discussed above, the Guidelines do not anticipate every possible factor that might take a case outside the heartland of the typical cases covered. The Supreme Court put it this way: "Acknowledging the wisdom, even the necessity, of sentencing procedures that take into account individual circumstances, Congress allows district courts to depart from the applicable Guideline range" in the unusual case. *Koon*, 518 U.S. at 92 (internal citation omitted). Because § 5K2.0 departures only occur in unusual circumstances, these departures do not weaken the goal of "*reasonable* uniformity." U.S.S.G. ch. 1, pt. A, introductory cmt. 3 (2000) (emphasis added). As the district court in this case observed, an aggravated felony that does not have a criminal intent element is "a unique situation." Thus, when the district court placed such an aggravated felony — the crime of misdemeanor death by vehicle — outside the heartland of aggravated felonies, it furthered the goal of proportionality in sentencing, and it did nothing to violate the goal of *reasonable* uniformity.

The majority also says that application note 5 is meaningless if cases not meeting the three criteria can be placed outside the heartland. I disagree. Application note 5 recognizes that aggravated felonies vary widely in their degree of seriousness, and it provides a nonexclusive set of circumstances when a downward departure for seriousness of the underlying crime should be considered. That offers meaningful guidance to sentencing courts.

In sum, application note 5 does not preclude consideration of lack of criminal intent as a factor that might take a case out of the heartland of § 2L1.2(b)(1)(A). Lack of criminal intent is not one of the few expressly forbidden factors listed in the Guidelines. And § 2L1.2 and application note 5 were not an effort by the Commission to consider and catalog every possible factor as inside or outside the heartland. This is confirmed by circumstances and history, which reveal that the Commission, in formulating U.S.S.G. § 2L1.2 (2000), did not take into account that the aggravated felony definition might cover some offenses that lack the element of criminal intent. As a result, the district court had the authority to *consider* whether the lack of intent factor was sufficient to take Alejo-Alejo's case out of the heartland of cases covered by § 2L1.2(b)(1)(A).

### B.

The next question is whether the district court was warranted in concluding that the lack of criminal intent took Alejo-Alejo's case outside the heartland of typical cases. In approaching this question, a sentencing court must figure out how the Guidelines have classified the potential departure factor. Specifically, is it a factor that is a forbidden, encouraged, discouraged, or unmentioned basis for departure? *United States v. Rybicki*, 96 F.3d 754, 757 (4th Cir. 1996). As discussed in part I, lack of criminal intent is not one of the few factors expressly forbidden by the Guidelines. *See Koon*, 518 U.S. 93-94. Because lack of criminal intent is not mentioned at all, it is properly classified as an unmentioned factor. Whether an unmentioned factor is a proper basis for departure is bound up in the question of whether the factor is sufficient to take a case outside the heartland: a departure for an unmentioned factor is appropriate when the "structure and theory of both relevant individual guidelines and the Guidelines taken as a whole" indicate that a case is outside the heartland and that a departure is justified. *Koon*, 518 U.S. at 96 (citation omitted). Again, in deciding whether to depart, the district court is "informed by its vantage point and [its] day-to-day experience in criminal sentencing." *Id.* at 98.

The district court found that the facts and circumstances surrounding Alejo-Alejo's underlying aggravated felony were sufficiently atypical and exceptional to take it outside the heartland of aggravated felonies, a heartland that includes treason, murder, rape, sexual abuse of a minor, racketeering, arms trafficking, and drug trafficking. While Alejo-Alejo was driving his truck on a North Carolina highway on October 1, 1993, he unintentionally caused an accident that resulted in a death. As Alejo-Alejo attempted to pass a vehicle in front of him, he unintentionally struck a third vehicle that was also attempting to pass. The third vehicle flipped over, and its driver was killed. Alejo-Alejo was convicted of misdemeanor death by vehicle in violation of N.C.G.S. § 20-141.4(a)(2) (1993), for which he received a two-year sentence. (Under 8 U.S.C. § 1101(a)(43)(F), aggravated felonies include crimes of violence carrying a sentence of at least one year.) The district court here, drawing on its broad experience, recognized that Alejo-Alejo's crime, unlike every other aggravated felony it was aware of, lacked criminal intent. The district court determined that the

lack of intent placed Alejo-Alejo's underlying crime outside the heartland of typical aggravated felonies, and the court departed downward by eight levels. This is a decision that "embodies the traditional exercise of discretion by a sentencing court." *Koon*, 518 U.S. at 98.*

Two points that the district court did not consider confirm that it had ample room to depart. First, two circuits hold that offenses like Alejo-Alejo's underlying offense, misdemeanor death by vehicle, are not aggravated felonies at all. Accordingly, in those circuits Alejo-Alejo's crime would not trigger the sixteen-level enhancement under Guidelines § 2L1.2(b)(1)(A). Specifically, in *United States v. Trinidad-Aquino*, 259 F.3d 1140 (9th Cir. 2001), the Ninth Circuit concluded that the California offense of injuring a person while driving under the influence is not a crime of violence and therefore not an aggravated felony for purposes of § 2L1.2(b)(1)(A). The court reasoned that "a defendant cannot commit a 'crime of violence' if he negligently — rather than intentionally or recklessly — hits someone or something with a physical object." *Id.* at 1145. In *Bazan-Reyes v. INS*, 256 F.3d 600, 611 (7th Cir. 2001), a deportation case, the Seventh Circuit held that Wisconsin's homicide by intoxicated use of a motor vehicle was not a crime of violence because it did not require the intent to use physical force against another's person or property. When at least two circuits hold that an offense that does not include criminal intent (or at least recklessness) as an element is not an aggravated felony at all, it cannot be an abuse of discretion to conclude that such an offense is outside the heartland of typical aggravated felonies. Second, North Carolina has reduced the prison term for misdemeanor death by vehicle to the point that the crime no longer counts as an aggravated felony under 8 U.S.C. § 1101(a)(43)(F). When Alejo-Alejo committed the crime of misdemeanor death by vehicle in October 1993, it was punishable by a prison term of up to two years. N.C.G.S. § 20-141.4(b) (1993). Today, this crime carries a maximum

---

*The departure in Alejo-Alejo's case is appropriate even if § 2L1.2's application note 5 is read as discouraging departure for an offense's lack of seriousness unless the note's three elements are present. If a factor is discouraged, the court may depart "if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case." *Koon*, 518 U.S. at 96. The district court's rationale for departing also satisfies this standard.

prison sentence of 125 days and thus does not meet the maximum one-year sentence requirement for an aggravated felony. N.C.G.S. § 20-141.4 (2001); N.C.G.S. § 15A0-1340.23 (2001); 8 U.S.C. § 1101(a)(43)(F). The North Carolina General Assembly's eventual action to reduce substantially the penalty for misdemeanor death by vehicle supports the district court's determination that this crime was outside the heartland of aggravated felonies when Alejo-Alejo committed it in 1993.

Because Alejo-Alejo's underlying crime (misdemeanor death by vehicle) lacks criminal intent, it is not like the usual crime covered by the aggravated felony definition. As a result, the district court did not abuse its discretion when it concluded that Alejo-Alejo's aggravated felony was atypical and that a downward departure of eight levels was warranted. To let stand a sixteen-level enhancement based on an offense that lies outside the heartland of aggravated felonies "would be unduly harsh and contrary to the intent of the Sentencing Commission." *United States v. Diaz-Diaz*, 135 F.3d 572, 580 (8th Cir. 1998) (affirming district court's downward departure because defendant's "underlying conviction does not reflect the kind of grave offense that warrants" a sixteen-level enhancement under § 2L1.2). *See also United States v. Sanchez-Rodriguez*, 161 F.3d 556, 561 (9th Cir. 1998) (en banc) (affirming district court's downward departure because defendant's underlying aggravated felony "was not comparable to, and not proportional to, the typical crimes of defendants who receive the 16-level enhancement" under § 2L1.2).

II.

Congress, in approving the structure for the Guidelines system, expressed the "intent that district courts retain much of their traditional sentencing discretion." *Koon*, 518 U.S. at 97. The majority's decision chips away at this discretion. The decision does not allow a district court to consider lack of intent as a factor that might take a case outside of the heartland of aggravated felonies. The majority thus "ignore[s] the district court's special competence" to determine whether the specific circumstances of a case make it unusual. *Koon*, 518 U.S. at 98 (citation omitted). I believe the district court properly carried out its assigned role in the sentencing scheme when it departed downward after finding that the unusual circumstances in

Alejo-Alejo's case place it outside the heartland of cases warranting a sixteen-level increase. The downward departure is entirely consistent with the Guidelines' primary goals of reasonable uniformity and proportionality in sentencing. Because I would affirm the departure, I respectfully dissent.