UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellant,*

v.

LAWRENCE EDWIN CRUMBLISS,
            *Defendant-Appellee.*

No. 01-4524

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

LAWRENCE EDWIN CRUMBLISS,
            *Defendant-Appellant.*

No. 01-4564

Appeals from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, Senior District Judge.
(CR-99-24-BR)

Submitted: October 31, 2002

Decided: January 31, 2003

Before WILKINS, LUTTIG, and KING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

Frank D. Whitney, United States Attorney, Anne M. Hayes, G. Nor-
man Acker, III, Assistant United States Attorneys, Raleigh, North

Carolina, for Appellant. Thomas P. McNamara, Federal Public Defender, G. Alan Dubois, Assistant Federal Public Defender, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Lawrence Crumbliss was convicted by a jury of embezzlement from an organization receiving $10,000 or more per year in federal benefits and aiding and abetting, 18 U.S.C. §§ 666, 2 (2000) (Count One), and conspiracy, 18 U.S.C. § 371 (2000) (Count Two). Section 666 provides for a fine or imprisonment of up to ten years for any agent of an organization that receives benefits in excess of $10,000 under a federal program involving a contract, or other form of federal assistance, who intentionally misapplies property valued at $5000 or more which is under the care, custody, and control of the organization. Subsection (c) of § 666 provides that "[t]his section does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business."

Crumbliss was sentenced to a term of five years probation with a special condition of 364 days home confinement with electronic monitoring. The government appeals the sentence, which was a departure below the guideline range of 37-46 months based on Crumbliss' ill health. *See U.S. Sentencing Guidelines Manual* § 5H1.4, p.s. (1994). Crumbliss cross-appeals his conviction, arguing that the district court abused its discretion when it refused to give his requested jury instruction on the § 666(c) defense and when it excluded as hearsay a memorandum by the North Carolina State Bureau of Investigation. Crumbliss also contends that § 666 is unconstitutional on its face. We affirm the conviction and sentence.

Crumbliss' prosecution arose out of his involvement with an experimental program for delivering mental health services to children and adolescents at Ft. Bragg, North Carolina, who were military dependants. In 1989, the Army issued a contract to the North Carolina Department of Human Resources, Division of Mental Health, to conduct the demonstration project. Dr. Lenore Behar, head of Child and Family Services, was the project director. The Division in turn contracted with area Mental Health Authorities, principally the Lee-Harnett County Mental Health Authority (Lee-Harnett), to administer the project. The Cardinal Mental Health Group (CMHG) was hired to provide services and administer the demonstration project. Lawrence Crumbliss was the executive director of CMHG, a non-profit organization set up solely for this purpose. All its operating funds were advanced by the North Carolina Division of Mental Health ("North Carolina"), through Lee-Harnett, as needed. The state was then reimbursed by the Army.

Because CMHG had no start-up capital, North Carolina advanced an initial sum of $250,000 for operating costs. The contract between North Carolina and CMHG was renewed each year. At the end of each state fiscal year, CMHG was required to return to North Carolina any excess funds and close its books. In 1994, an audit revealed that CMHG had expended approximately $305,372 in "unallowable costs," chiefly its attempts to secure an interim contract and follow-on contract between the Army and various for-profit businesses incorporated by Crumbliss and others at CMHG. These included Cardinal Research and Development (CR&D) and Cardinal Behavioral Sciences, Inc. (CBSI).

Crumbliss and Drs. Warren Lane, William Keeton, and Louis Stein were initially charged in a fifty-count indictment with theft concerning programs receiving federal funds in violation of 18 U.S.C. § 666 (2000), conspiracy, and money laundering. Lane, Keeton, and Stein were placed on pretrial diversion under agreements which required them to make restitution. Crumbliss was first tried in January 2000. Before the trial, Crumbliss moved unsuccessfully to dismiss the indictment on the ground that prosecution was barred under § 666(c).

The government in turn sought to exclude as hearsay a November 1994 memorandum from an agent of the North Carolina State Bureau

of Investigation (SBI) to his supervisor concerning a meeting with Department of Human Resources administrators, including Behar. The agent indicated that no prosecution would be undertaken and that the case would remain inactive pending further notification from the State Auditor's Office.

The memorandum quoted the administrators as advising him that "Cardinal Health Group did not 'mislead, defraud or try to hide' anything from the Department of Mental Health in that the Cardinal Health Group believed the $183,000 expenditure[1] was legitimate," and quoted Behar as stating that "there was 'no malfeasance' involved." The district court granted the motion to exclude, finding that such opinions about Crumbliss' criminal intent were not admissible. After trial, the jury deadlocked and a mistrial was declared.

Crumbliss was tried again in July 2000 on two counts, embezzlement under § 666 and conspiracy. The district court adopted its rulings from the first trial. Crumbliss requested the following jury instruction drawn from § 666(c): "If you find that the salaries, wages, fees, or other compensation paid, or expenses paid or reimbursed, occurred in the usual course of business, then you should find the defendant, Lawrence E. Crumbliss, not guilty." The district court refused to give the requested instruction. However, the court instructed the jury fully on the "good faith defense," stating in part that "[t]he good faith of the defendant is a complete defense to both counts one and two of the indictment because good faith is simply inconsistent with knowingly and willfully converting, embezzling and intentionally misapplying property." The court also instructed the jurors that they could acquit Crumbliss if they found that "Cardinal Mental Health Group placed the defendant in such a situation that a person of ordinary prudence familiar with the business usages and the nature of the particular business would be justified in assuming that he had the authority to manage and expend the funds of Cardinal Mental Health Group as he did."

Crumbliss' defense was that he had not intentionally misapplied project funds because he had followed the advice of his lawyers in

---

[1]This amount was transferred from CMHG to Cardinal Research and Development between March and September 1994.

expending money advanced to CMHG from North Carolina through Lee-Harnett in pursuit of the interim and following contracts, that these costs were allowable under the contract with North Carolina or at least not clearly unallowable in that they were incurred to ensure the continuation of project services, that CMHG and CBSI were essentially the same entity so that money expended for the benefit of CBSI furthered the purpose of the initial contract, and that Crumbliss made no attempt to conceal the transfers from CMHG to CR&D and CBSI. Crumbliss was convicted on both counts.

On appeal, the government contests the district court's downward departure in sentencing Crumbliss. A sentencing court may depart below the guideline range only if the court finds a mitigating factor of a kind, or to a degree, not adequately considered by the Sentencing Commission. 18 U.S.C.A. § 3553(b) (2000); *Koon v. United States*, 518 U.S. 81, 98 (1996) (aspects of the case must be unusual enough to take it outside the heartland of cases covered by the guideline). If the guidelines encourage departure for a factor being considered as a basis for departure, the court may depart on that ground unless the factor has been adequately taken into account by the applicable guideline. *United States v. Alejo-Alejo*, 286 F.3d 711, 715 (4th Cir. 2002) (quoting *United States v. Rybicki*, 96 F.3d 754, 757 (4th Cir. 1996)). If the court identifies a factor for which departure is discouraged, the court may rely on that factor to depart only "in exceptional cases." *Id.* (internal quotation and citations omitted).

A district court's decision to depart is reviewed generally for abuse of discretion. *Koon*, 81 U.S. at 98-99. However, a district court's determination that a factor is "encouraged" or "discouraged" as a basis for departure is reviewed for clear error. *Rybicki*, 96 F.3d at 757-58. A decision that a discouraged factor is present to an exceptional degree that permits departure is reviewed de novo. *Id.* at 758. In this case, the relevant guideline, USSG § 5H1.4, discourages a departure based on the defendant's physical condition, but also provides that a departure may be warranted for a defendant with "an extraordinary physical impairment" because, "in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment."

Crumbliss was diagnosed with diabetes in June 2000. He subsequently had two toes amputated and suffered debilitating weakness

and pain in his legs and hips. The government argues that the district court erred in finding that Crumbliss' condition was exceptional because his doctor's letter stated only that he needed careful control of his blood sugars and physical therapy and the Bureau of Prisons (BOP) could provide adequate care for his diabetic condition. The government argues that a defendant's condition *cannot* be extraordinary if the BOP has the ability to provide appropriate medical treatment. For this principle, the government cites *United States v. Persico*, 164 F.3d 796, 806 (2d Cir. 1999), and *United States v. Crickon*, 240 F.3d 652, 656 (7th Cir. 2001). However, neither case is binding precedent in this Circuit and we do not find these authorities persuasive.

Applying the de novo standard of review, we are not convinced that the district court erred in concluding that Crumbliss suffered from an extraordinary impairment. Although diabetes is a relatively common disease, Crumbliss' experience was apparently not typical in that he developed complications quickly which required amputation of two toes and use of a wheelchair because of nerve damage in his lower extremities. His condition was not stabilized and the best method of treatment had not yet been determined. The issue is a close one; however, we cannot find that the court's decision was legally erroneous.

Having found that Crumbliss had an extraordinary impairment, the district court was permitted, even encouraged, under § 5H1.4 to depart below the guideline range and impose a sentence of home detention if it determined that such a sentence would be "as efficient as, and less costly than, imprisonment." The court so found, noting that, "It costs the taxpayers of this country a lot of money to keep a healthy person in prison. Quite obviously, the cost is compounded when that person is in such physical constraints that it's going to cause a lot of hospitalizations, medication, and treatment." A sentencing court's decision that the particular facts and circumstances of the case take the case out of the heartland and justify a departure is reviewed for abuse of discretion. *Rybicki*, 96 F.3d 754, 758. We find that the court did not abuse its discretion in departing to a sentence of five years probation with 364 days of home detention and electronic monitoring.

Next, Crumbliss challenges the trial court's decision not to give his requested jury instruction on the statutory defense to prosecution set out in § 666(c). This issue is reviewed for abuse of discretion. *United States v. Russell*, 971 F.2d 1098, 1107 (4th Cir. 1992). A court's refusal to give a requested instruction is reversible error if the instruction "(1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important, that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense." *United States v. Lewis*, 53 F.3d 29, 32 (4th Cir. 1995).

Crumbliss contends that the evidence was sufficient to establish a basis for his defense and to create a factual issue that should have been submitted to the jury. He argues that there was genuine confusion about what expenses were allowable for project purposes, pointing to opposing testimony from the government's expert, Patrick McGeehin, and his own expert, John Ford. He also notes that state auditor Murphy Woods initially recommended that bid and proposal costs for the interim contract were allowable and reimbursable to CMHG. He further notes that McGeehin and Ford differed about whether CMHG and CBSI were separate entities or the same entity.

Crumbliss correctly argues that a defendant has a right to a jury instruction setting out his theory of defense if any evidence supports it, however weak. *See United States v. Urlacher*, 979 F.2d 935, 938 (2d Cir. 1992). He asserts that the district court abused its discretion in denying his proffered jury instruction concerning the statutory exception to liability because some evidence supported his defense theory. He further contends that the court's failure to give the instruction seriously impaired his ability to conduct his defense and, in his reply brief, asserts that the "good faith" instruction was not an adequate substitute because the jury was not aware that the statutory defense existed.

The government counters, first, that the jury instruction was properly denied simply because of $12,000 in personal expenses Crumbliss charged to the CMHG credit card and never repaid (except with CR&D funds derived from CMHG), which was not shown to be a bona fide business expense incurred in the ordinary course of business. Crumbliss responds in his reply brief that he sought the § 666

jury instruction solely with respect to the money expended on bid and proposal costs, while the good faith instruction covered his American Express charges.

Second, the government argues that there was no evidence that the $183,000 paid by CMHG to CR&D was money spent in the ordinary course of business. The government concedes that Crumbliss put on some evidence through his expert witness that the money spent for work done in pursuit of the interim and follow-on contracts was allowable under the Army contract. Thus the district court's refusal to give the instruction may have been error. However, the government asserts that the transfers of money from CMHG to CR&D were not in the ordinary course of business. We agree. The government points to evidence of CMHG's accountant's anxiety about the transfers and his refusal to personally sign the checks. We note also that the Army had repeatedly explained to Crumbliss that he could not use money from the existing contract to pay for any costs incurred in pursuing the interim and follow-on contracts. Further, there was evidence that Crumbliss misrepresented the financial status of CBSI to the Army, and evidence of the unexplained appearance of backdated contracts and invoices and a document with the signature of CMHG Director Joseph Sandlin, which was disavowed at trial, all of which purported to justify transfers of money from CMHG to CR&D. There was also evidence that, in September 1994, Crumbliss requested from another health care company a donation of nearly $500,000 to repay unallowed expenses CMHG had made and provide operating money for CBSI. In sum, the evidence did not establish that the expenditures in question were made in the ordinary course of business.

Finally, the government argues that, if the court erred in refusing to give the requested instruction, the error was not reversible error because the district court's "good faith" instruction substantially covered the same ground as Crumbliss' requested instruction. We agree. As described earlier, the district court instructed the jury that if Crumbliss acted in good faith, it was "a complete defense to both Counts One and Two because good faith is simply inconsistent with knowingly and willfully converting, embezzling and intentionally misapplying property." The court also instructed the jury that, "[a]n honest mistake in judgment or an honest error in management does not rise to the level of criminal conduct," and that "[t]he unreasonableness of

a person's belief in no way forecloses a finding that the person was acting in good faith." The government notes that Crumbliss' attorney argued that all money received by Crumbliss as salary and all expenditures by CMHG were valid under the existing contract with North Carolina and the Army and thus, by inference, were made in the ordinary course of business. The district court's good faith instruction would have allowed the jury to acquit Crumbliss if it found that he acted in this belief, even if the evidence showed him to have been wrong in that view. Therefore, no reversible error occurred.

Crumbliss next argues that § 666 is unconstitutional on its face. Because Crumbliss did not challenge the constitutionality of § 666 in the district court, his claim is reviewed for plain error. *United States v. McAllister*, 272 F.3d 228, 230-31 (4th Cir. 2001). No circuit court has held that § 666 is unconstitutional. Instead, the Eleventh Circuit has recently held that § 666 is a valid exercise of Congress' powers under the Spending Clause. *United States v. Edgar*, 304 F.3d 1320, 1323 (11th Cir. 2002). Consequently, the district court did not plainly err in failing to find § 666 unconstitutional.

Last, Crumbliss argues that the district court abused its discretion in excluding the November 1994 SBI memorandum from evidence. *See United States v. D'Anjou*, 16 F.3d 604, 610 (4th Cir. 1994) (district court's rulings on the admissibility of evidence are reviewed for abuse of discretion). The court excluded the memorandum on the ground that the "letter is not admissible nor will any witness be permitted to testify that in their view that the defendants didn't have any criminal intent . . . [because] opinion testimony about their criminal intent is not admissible."

In this appeal, Crumbliss contends for the first time that the memorandum was admissible as a public record under the hearsay exception in Federal Rule of Evidence 803(8)(C), which provides for the admission of "[r]ecords, reports, statements or data compilations, in any form, setting forth . . . factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." However, Crumbliss did not argue that the memorandum was admissible as a public record in the district court. Instead, his attorney opposed the government's contention that it was inadmissible hear-

say, and stated, "Our purpose is to show that . . . there was some ambiguity with respect to this contract under which these funds were administered, and . . . these individuals . . . concluded that . . . they did not see that there had been any malfeasance, there hadn't been any fraud. No one had tried to mislead anybody or hide anything."

Crumbliss further argues that the hearsay statements within the report did not require exclusion as internal hearsay because they were not offered for the truth of the matter asserted,[2] but simply to provide context for the agent's conclusion that no prosecution should be initiated in that it followed from his interviews of the state employees. Crumbliss maintains that the memorandum tended to refute the testimony of government witnesses that CMHG had misused state funds and the suggestion that the conduct was criminal and to corroborate his claim that federal authorities inflated a civil dispute into a crime even though North Carolina personnel had not expressed any concern about the propriety of his activities.

We find that the memorandum was properly excluded as hearsay and was not admissible under the public record exception because the exception applies only to factual findings resulting from an investigation, while the memorandum establishes that no investigation was conducted. The SBI agent's report of his meeting with the North Carolina Division of Mental Health administrators cannot be taken as the final report of an investigation. In fact, the memorandum concludes that the case would "remain 'inactive' in an enforcement file pending notification from the State Auditor's Office." Such a report does not come within the exception set out in Rule 803(8)(C). *See Toole v. McClintock*, 999 F.2d 1430 (11th Cir. 1993) ("Rule 803 makes no exception for tentative or interim reports subject to revision and review"). Thus, to the extent Crumbliss can raise the public record exception for the first time on appeal, he has failed to show that the district court abused its discretion in excluding the memorandum.

---

[2]That is, that "Cardinal Health Group did not 'mislead, defraud or try to hide' anything from the Department of Mental Health in that the Cardinal Health Group believed the $183,000 expenditure was legitimate," and that "there was 'no malfeasance' involved."

We therefore affirm the conviction and the sentence imposed by the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*