# UNITED STATES COURT OF APPEALS

**UNPUBLISHED**

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

   *Plaintiff-Appellee,*

v.

No. 02-4710

TERRY GENE TAYLOR,

   *Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of West Virginia, at Beckley.
Charles H. Haden II, District Judge.
(CR-01-6)

Submitted: February 28, 2003

Decided: March 17, 2003

Before MOTZ, TRAXLER, and SHEDD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

Kevin B. Burgess, HAMILTON, BURGESS, YOUNG & POLLARD, P.L.L.C., Fayetteville, West Virginia, for Appellant. Kasey Warner, United States Attorney, L. Anna Crawford, Assistant United States Attorney, Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Terry Gene Taylor pled guilty to one count of wire fraud in violation of 18 U.S.C. § 1343 (2000), and was sentenced to the statutory maximum term of five years imprisonment. Taylor appeals his sentence, contending that the district court abused its discretion in departing above the guideline range and failed to give adequate notice of the specific grounds for departure. He also contends that the eight-level departure was excessive. We affirm.

Taylor defrauded at least 263 motorcycle dealers in twenty states and fifty-two videographers, as well as *Sports Illustrated*, *TV Guide*, and Playboy Enterprises. Taylor carried out his scheme by offering to produce a television advertisement for the business to air on a program called "Wheels TV," which he represented would be about NASCAR racing and other motor sports, would be hosted by an attractive blond woman, and would be shown on a local television station affiliated with national TV network. Taylor sometimes showed the victim a videotape of a "Wheels TV" program he had filmed. Taylor booked air time with fifty television stations and sometimes showed an intended victim his contract with the local station. Some victims called their local station to verify Taylor's claims and were thus convinced that he was legitimate. However, Taylor did not pay for most of the air time he booked, and the air time was cancelled. Taylor also took out full-page ads for "Wheels TV" in national magazines, which he showed to his intended victims. Taylor obtained the ads by making an initial payment to the magazine with a worthless check on a closed bank account and not making any subsequent payments. In addition, to bolster his credibility, Taylor showed potential victims contracts that other dealers had signed with him.

When a victim agreed to buy a television ad and had paid Taylor (usually between $500 and several thousand dollars), Taylor hired videographers to film the purported commercials. Most of these people were never paid for their work.

The probation officer used the *U.S. Sentencing Guidelines Manual* for 2000 to calculate Taylor's sentence, rather than the 2001 manual, to avoid an ex post facto problem, and thus applied USSG § 2F1.1. To the base offense level of 6, the probation officer added 11 levels for a loss over $800,000, USSG § 2F1.1(b)(1)(I), and a 2-level enhancement under subsection (b)(2) for more than minimal planning and a scheme to defraud more than one victim. With an adjustment for acceptance of responsibility, Taylor's offense level was 16. He was in criminal history category I, making his recommended guideline range 21-27 months. The presentence report mentioned three possible grounds for departure: (1) the adequacy of Taylor's criminal history category, USSG § 4A1.3, p.s., (2) dismissed and uncharged conduct, USSG § 5K2.21, p.s., and (3) whether the guidelines adequately addressed the harm to the individuals and businesses defrauded by Taylor.

The district court gave notice twice before sentencing that it was considering an upward departure. As potential grounds for departure, the court listed the three grounds set out in the presentence report. In its second notice, the court stated that the focus of the third possible departure ground was "lost sales due to the absence of advertising, the lost opportunities occasioned upon the videographers and others, and the embarrassment and other harm suffered by the victims in having to report the fraud to their superiors and, in some instances, their customers."

The only issue at sentencing was the departure contemplated by the district court. After hearing testimony from some of the fraud victims present and reviewing letters submitted by other victims, the district court departed upward by eight levels to a guideline range of 51-60 months and imposed a term of sixty months.

On appeal, Taylor first contends that the harm suffered by his victims was typical of all fraud victims and thus a departure was unwarranted. A sentencing court may depart from the guideline range only if the court finds an aggravating or mitigating factor of a kind, or to a degree, not adequately considered by the Sentencing Commission. 18 U.S.C.A. § 3553(b) (2000); *Koon v. United States*, 518 U.S. 81, 98 (1996) (aspects of the case must be unusual enough to take it outside the heartland of cases covered by the guideline). If the guidelines

encourage departure for a factor being considered as a basis for departure, the court may depart on that ground unless the factor has been adequately taken into account by the applicable guideline. *United States v. Alejo-Alejo*, 286 F.3d 711, 715 (4th Cir. 2002) (citing *United States v. Rybicki*, 96 F.3d 754, 757 (4th Cir. 1996)).

A district court's decision to depart is reviewed generally for abuse of discretion. *Koon*, 81 U.S. at 98-99. However, a district court's determination that a factor is "encouraged" or "discouraged" as a basis for departure is reviewed for clear error. *Rybicki*, 96 F.3d at 757-58. The district court in this case correctly determined that Application Note 11 to § 2F1.1 encourages a departure when the fraud "caused or risked reasonably foreseeable, substantial non-monetary harm." The court also decided that the guidelines, principally § 2F1.1, do not adequately take this factor into account. This decision is reviewed de novo. *Rybicki*, 96 F.3d at 757-58.

Section 2F1.1 provides enhancements for certain non-monetary harms, such as the defendant's misrepresention that he was acting on behalf of charitable causes or government agencies, and bodily injury to a victim. However, the background commentary to § 2F1.1 states that "amount of loss and whether the offense was an isolated crime of opportunity or was sophisticated or repeated . . . are the primary factors upon which the guideline has been based." Section 2F1.1 does not address the loss of reputation or trust described by several of the victims here, principally the videographers who produced the videos and commercials that Taylor used to carry out the fraud, and who lost not only money but, possibly, their good name by unwittingly aiding Taylor's commission of the offense. We conclude that the court did not err in deciding that this particular harm is not adequately accounted for in § 2F1.1 or elsewhere in the guidelines.

Taylor does not dispute that non-monetary harm may be the basis for a departure under Application Note 11 to § 2F1.1, but contests the district court's assessment that the degree of non-monetary harm he caused was so substantial and foreseeable that a departure was warranted. This decision by the court is reviewed for abuse of discretion. *Rybicki*, 96 F.3d at 758. Taylor contends that the harm suffered by his victims was common to most fraud cases. He maintains that the court overstated the fear of investing in future advertising expressed by the

motorcycle dealers who testified, and that such mistrust as was expressed is typical of fraud victims. Taylor further argues that the court was wrong to accept at face value the claims of Tim Dench and Larry Smith, the two videographers who testified, because Dench said his business was already in difficulty when he met Taylor and Smith could not say with certainty that he had lost specific work because of his identification with Taylor.

The court based its assessment on testimony and letters submitted by victims concerning the effects of the fraud. While the suspicion engendered in the dealers concerning future expenditures for advertising is not an atypical harm for a fraud victim, the harm done to the videographers—who not only lost money but were inveigled into assisting Taylor in carrying out the fraud and thus had their professional reputations damaged—is not typical of an ordinary fraud offense. Harms of this type may warrant a departure. *United States v. Akindele*, 84 F.3d 948, 954 (7th Cir. 1996) (where fraud victims' credit histories were tarnished and criminal records wrongly created in their names, harm transcended monetary loss and justified departure). We conclude, therefore, that the district court did not abuse its discretion in departing.

Taylor's claim that the district court did not give him fair notice of the potential grounds for departure is wholly without merit. Federal Rule of Criminal Procedure 32 requires the sentencing court to give the parties reasonable notice if it is contemplating a departure on a ground not identified in the presentence report or a prehearing submission by the government. The court must identify the specific ground on which it may depart. *Burns v. United States*, 501 U.S. 129, 138-39 (1991). Here, the presentence report suggested three possible grounds for departure: adequacy of criminal history category, USSG § 4A1.3, dismissed and uncharged conduct, USSG § 5K2.21, and "whether the guidelines adequately address[ed] the harm to the individuals and businesses defrauded by the defendant." In its first notice of a possible departure, the district court listed the same grounds. In its second notice, the district court explained further the factors it would consider in connection with ground three. Ultimately, the court departed based on the third ground identified as a possible basis for departure. Taylor received the required notice.

Finally, Taylor argues that the departure was excessive. The guidelines do not provide specific guidance for determining the extent of a departure other than stating that it must be reasonable under the circumstances. *United States v. Terry*, 142 F.3d 702, 707 (4th Cir. 1998); 18 U.S.C. § 3742(f)(2) (2000). The district court must give a principled explanation of the extent of the departure. *Terry*, 142 F.3d at 707.

The court stated that it wished to impose for the non-monetary harm a punishment equal to the punishment Taylor received for the monetary loss he caused. Taylor received an eleven-level enhancement under § 2F1.1 for having caused a loss of more than $800,000. Viewed in this light, the court's eight-level departure was not unreasonable.

We therefore affirm the sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*